UNITED STATES of America, Plaintiff-Appellee,

v.

Noe BURGOS, Defendant-Appellant.

No. 82–5035.

United States Court of Appeals, Eleventh Circuit.

Dec. 12, 1983.

---

Michael Blacker, Coconut Grove, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Michael Hursey, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before FAY and KRAVITCH, Circuit Judges, and ATKINS *, District Judge.

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

FAY, Circuit Judge:

Appellant, Noe Burgos, appeals his conviction by the United States District Court for the Southern District of Florida on charges of conspiracy to violate federal firearms law by dealing in firearms without a license in violation of 18 U.S.C. § 371 (1966). Prior to trial, Mr. Burgos moved to suppress all of the firearms seized at his home on the basis that they had been seized by Special Agent Donald Kimbler in violation of his fourth amendment rights. After a hearing on the motion to suppress, the district court denied the motion. Mr. Burgos then waived jury trial and was tried and found guilty on stipulated facts and evidence. This court finds that the case agent had probable cause to arrest Mr. Burgos. Furthermore, reasonable grounds existed for searching appellant's residence and exigent circumstances justified the warrantless search, therefore, we affirm the district court's denial of appellant's motion to suppress.[1]

The issue on appeal is whether the district court erred in denying the motion to suppress. This presents two important questions for this court to decide: (1) whether the initial encounter between Agent Kimbler and Burgos was merely a police-citizen contact falling outside the scope of the fourth amendment or whether it was an arrest requiring probable cause and *Miranda*[2] warnings; (2) whether there was probable cause and exigent circumstances justifying the warrantless search of Burgos' residence.

## I. FACTUAL BACKGROUND

Sometime in July, 1978, Special Agent Kimbler of the Bureau of Alcohol, Tobacco and Firearms received word from a confidential informant that a man, named Kenneth Kasha, was purchasing firearms often at the Tamiami Gun Shop in Miami. Agent Kimbler went to the gun shop, checked its records and confirmed that Kenneth Kasha had purchased approximately one hundred ninety-two firearms from Tamiami Gun Shop between December, 1977, and July 17, 1978. The Gun Shop's records also indicated that Mr. Kasha was using a Type 3 federal firearms license, which can be used only by collectors of curios and relic-type guns. Mr. Kasha had been purchasing guns from the gun shop during this period of time that were not the type of firearms included within the definition of curios and relics under the Gun Control Act of 1968. The dealer at the gun shop told Agent Kimbler that he believed that Mr. Kasha would be returning soon to purchase more guns.

Shortly thereafter, at Agent Kimbler's request, the gun dealer notified him that Mr. Kasha would be returning to the shop to pick up another purchase. Based on this information Agent Kimbler organized a surveillance team and returned to the gun shop on July 27, 1978, the date on which Mr. Kasha was expected to return to pick up his new firearms purchase.

Agent Kimbler arrived at the Tamiami Gun Shop early and found the gun dealer packing firearms for Mr. Kasha into large boxes. Agent Kimbler requested that the dealer use special shiny, tan tape on Mr. Kasha's boxes which would make the boxes readily identifiable to the surveillance team from a distance. The gun dealer agreed to do this.

Agent Kimbler was still in the shop when Mr. Kasha arrived. He left immediately and joined the surveillance team outside, at a spot from which all agents could see the gun shop clearly. Agent Kimbler soon observed Mr. Kasha leaving the gun shop carrying the bound cardboard box with the identifiable tape. Mr. Kasha placed the box on the back seat of his black 1975 Cadillac and, with Agent Kimbler following him, drove to another gun shop, where he purchased additional firearms. Once more, he

---

**1.** Although we affirm the denial of the motion to suppress we do so on grounds different from those stated by the trial judge. We do not agree with the finding of the district court judge that the original encounter between Burgos and Kimbler was merely a contact and that Mr. Burgos consented to a search of his home.

**2.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 1603, 16 L.Ed.2d 694.

placed this second box of firearms on the back seat of his car.

After leaving this gun shop Agent Kimbler and the surveillance team followed Mr. Kasha to his apartment. They waited outside for about forty minutes and then observed appellant come out of the apartment with Mr. Kasha and both men transfer the two boxes from Mr. Kasha's car to appellant's car's trunk.

Mr. Burgos drove to his residence with the surveillance team following him. He backed his car right up to the porch of the house and, together with another male who had been in the house, took the two large boxes, containing forty-five guns, out of his car trunk and into the house.

As appellant was exiting the house, leaving the front door partially open, Agent Kimbler arrived. While the evidence is anything but clear as to the details, there is no question that several law enforcement vehicles arrived at about the same time. Numerous officers were in the immediate area. One or more units may have actually driven up in the front yard area of the home. Agent Kimbler confronted appellant on the porch area with at least one other officer. When Agent Kimbler identified himself as a federal officer and displayed his badge, he immediately advised appellant that he wanted to speak to him about the firearms. It was clear to all present that Burgos was not free to go anywhere.[3] Appellant did gesture with his arm for Agent Kimbler and two other agents who were then on the porch to go into the house.

As the agents stepped into the house, they immediately saw the two boxes previously picked up at the gun shops, standing next to an open refrigerator. All around and inside the refrigerator the agents could see blue Smith & Wesson gun boxes with diapers around them. At this point, one of the agents read the appellant his rights in Spanish and he was arrested.

Agent Kimbler then went to Mr. Kasha's apartment, read him his rights, and arrested him. Mr. Kasha accompanied Agent Kimbler to Mr. Burgos' home where both parties identified each other. Prior to trial the government and Mr. Burgos stipulated that Mr. Burgos had purchased and taken possession of two boxes of firearms from Mr. Kasha and that neither one of them possessed the required firearms license.

The appellant challenged the admission of the physical evidence on three separate grounds: (1) the circumstances surrounding the initial encounter constituted an unlawful arrest because it was not based upon probable cause; (2) the initial encounter between Agent Kimbler and the defendant was a custodial detention which would mandate *Miranda* warnings; and (3) the warrantless seizure of the guns in appellant's home was a violation of his fourth amendment rights. The district court rejected all these arguments and found that the initial encounter between Agent Kimbler and the appellant was merely a contact, and not a custodial detention, thus not requiring either probable cause or *Miranda* warnings. The district court further found that there was no violation of appellant's fourth amendment rights because the appellant consented to the entry by the agents into his home.

## II. SEIZURE AND MIRANDA RIGHTS

In order to determine whether appellant's fourth and fifth amendment rights were violated at the initial confrontation, we must determine if the encounter between Agent Kimbler and the appellant was the type of police-citizen encounter which would invoke the fourth and fifth amendment safeguards. This circuit, in *United*

---

**3.** The testimony is contradictory as to whether Agent Kimbler had his gun drawn, whether or not he stumbled, whether there were two or three or more agents either on or near the porch and whether any of these officers had drawn their weapons. While we take the facts in the light most favorable to the government, *Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1975), we conclude that the only reasonable interpretation that can be drawn is that Mr. Burgos was restrained and seized. We also conclude that such seizure was done with probable cause. These legal conclusions are made based upon the facts about which there is no dispute.

States v. Berry, 670 F.2d 583 (5th Cir.1982) (Unit B *en banc*), specifically identified three types of police citizen encounters: "communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, brief 'seizures' that must be supported by reasonable suspicion, and full-scale arrests that must be supported by probable cause." *Id.* at 591.

In *Berry* we held that a stop was a seizure if "in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *Id.* at 591 (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)). Although there was some contradiction as to the facts of the encounter Agent Kimbler and Mr. Burgos agreed that Mr. Burgos was not free to leave. During the hearing on the motion to suppress Agent Kimbler testified on cross-examination that Mr. Burgos "would not have been able to leave until he answered the question." Record, Vol. II, p. 118. Mr. Burgos also testified that he did not believe he would have been allowed to leave had he asked for permission to leave. Record, Vol. II, p. 231. Given these circumstances, we conclude that a reasonable person would no longer have thought he was free to leave and the encounter thus constituted a seizure under the standards of *Berry.*

Once a stop has been held to be a seizure, it can be constitutional only if based upon reasonable suspicion. *United States v. Berry,* 670 F.2d at 591. The Supreme Court has defined reasonable suspicion as "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant intrusion." *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct.

1868, 1879, 20 L.Ed.2d 889 (1968). At the time of the stop, Agent Kimbler had information that Mr. Kasha had been purchasing large quantities of firearms, without the proper license, for seven months. Mr. Kasha, again without the proper license, transferred these firearms to Mr. Burgos. The surveillance team had watched the purchase, the transfer and the unloading of the guns into Mr. Burgos' home. It is apparent that Mr. Burgos was also not qualified to purchase these firearms directly from the gun shops. Reasonable suspicion thus supported this seizure.[4]

Having concluded that there was no violation of appellant's fourth amendment rights in the seizure, we must now focus upon whether or not there was a violation of appellant's fifth amendment right against self-incrimination. The Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) stated that the prosecution may not use any statements stemming from custodial interrogation of a defendant "unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444, 86 S.Ct. at 1612. If Agent Kimbler failed to use the procedural safeguards mandated by *Miranda,* appellant's consent for the agents to enter his home should be vitiated since it was elicited in violation of appellant's fifth amendment rights.

A custodial interrogation takes place when a defendant is "taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,* 384 U.S. at 444, 86 S.Ct. at 1612. The court in *United States v. Del Soccorro Castro,*[5] 573 F.2d 213, 215 (5th Cir.1978), set out four relevant factors to be considered by

---

**4.** Even though Agent Kimbler only needed reasonable suspicion to support the seizure, this court finds that the agent also had probable cause to arrest. Probable cause to arrest exists where the facts and circumstances within the officers' knowledge, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed. *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879, 1889

(1949). These agents had probable cause to believe that both men were committing the crime of dealing in unlicensed firearms.

**5.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding upon this court unless and until they are overruled by the Eleventh Circuit sitting *en banc. See, Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

the court in determining whether or not there is a custodial interrogation which would necessitate *Miranda* warnings, to-wit: (1) the existence vel non of probable cause to arrest; (2) the subjective intent of the police; (3) the subjective belief of the defendant; (4) the focus of the investigation.

Applying these factors to the facts of this case there is little doubt that appellant was the subject of a custodial interrogation and that no *Miranda* warnings were given to him at this time. We have already concluded that the agents in this case had probable cause to believe that both men were committing the crime of dealing in unlicensed firearms. Agent Kimbler admitted that the appellant was not free to leave. Appellant stated in his testimony that he did not believe he would have been allowed to leave had he asked for permission to leave. There is no doubt that the investigation had focused on the appellant prior to the encounter. We therefore conclude that the agents did not have the appellant's consent for the warrantless entry.[6] Nevertheless we affirm the district court's denial of the motion to suppress because we find that the agents had probable cause to search the residence, under circumstances sufficiently exigent to validate the warrantless intrusion.

## III. EXIGENT CIRCUMSTANCES AND WARRANTLESS ENTRY

"It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). The Supreme Court, however, has recognized that circumstances sometimes preclude the obtaining of a warrant and therefore has allowed warrantless searches and seizures of a residence where

both probable cause and exigent circumstances exist. *See, Warden v. Hayden,* 387 U.S. 294, 298, 87 S.Ct. 1642, 1645, 18 L.Ed.2d 782 (1967); *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). *See also, Vale v. Louisiana,* 399 U.S. 30, 35, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970).

■ Probable cause to search exists where the facts lead a reasonably cautious person to believe that the "search will uncover evidence of a crime." *United States v. Rojas,* 671 F.2d 159, 165 (5th Cir.1982) (Unit B). Here, there is no doubt that the agents had sufficient information to believe that Mr. Kasha and Mr. Burgos were dealing in firearms without the proper licenses. Agent Kimbler had information that Mr. Kasha had been illegally purchasing firearms for seven months. The agents saw him pick up the guns, transfer them to Mr. Burgos' car and then observed Mr. Burgos carry them into his home. These collective facts would lead a reasonably cautious person to believe that the search would uncover evidence of a crime. There was probable cause to enter Mr. Burgos' home.

■ A warrantless entry, however, must be justified not only by probable cause but also by exigent circumstances. *United States v. Blasco,* 702 F.2d 1315, 1325 (11th Cir.1983). The exigent circumstances doctrine recognizes several common situations where the time consuming resort to a neutral magistrate for an arrest or search warrant is unnecessary, for example: hot pursuit, *United States v. Santana,* 427 U.S. 38, 42–43, 96 S.Ct. 2406, 2409–2410, 49 L.Ed.2d 300 (1976); fleeing suspect, *United States v. Mesa,* 660 F.2d 1070 (5th Cir.1981) (Unit B); danger to arresting officers or the public from the suspect, *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782

---

**6.** Even if we were to find that the search was tainted by the *Miranda* violation, the evidence would still be admissible under the "inevitable discovery" exception to the "fruit of the poisonous tree" doctrine. In *Wong Sun v. United States,* 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963) the Supreme Court held that the exclusionary rule requires suppression of "fruits" obtained "as a direct result" of an

illegal search or an invalid interrogation. This circuit in *United States v. Roper,* 681 F.2d 1354 (11th Cir.1982) adopted the Fifth Circuit's reasoning in *United States v. Brookins,* 614 F.2d 1037 (5th Cir.1980) and refused to exclude evidence which would have been discovered regardless of any alleged unconstitutionality. There is no doubt that the firearms in this case would have been discovered by legal means.

(1967); mobility of the vehicle, *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); risk of removal or destruction of narcotics, *United States v. Rubin,* 474 F.2d 262 (3d Cir.1973), *cert. denied,* 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973).

▮ The term "exigent circumstances" refers to a situation where the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action. Such is the case when resort to a warrant might endanger the police or the public. *See, e.g., Cady v. Dombrowski,* 413 U.S. 433, 447, 93 S.Ct. 2523, 2531, 37 L.Ed.2d 706 (1973). Under the circumstances of this case, the exigencies of the situation made the warrantless entry imperative. The agents had been informed that Mr. Kasha had purchased one hundred and ninety-two guns without the proper license in a seven month period. They had observed Mr. Kasha transfer two large boxes filled with arms to Mr. Burgos. They had observed Mr. Burgos enter his home and get help from an unknown man in unloading the boxes. The agents were faced with a house laden with arms and an unknown number of people inside. The officers could reasonably believe that the household was an arsenal. The threat of injury to the neighborhood and arresting officers justified the avoidance of delay involved in obtaining a warrant. Quick action increased the likelihood that no one would be injured. "The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Warden v. Hayden,* 387 U.S. 294, 298–299, 87 S.Ct. 1642, 1645–46, 18 L.Ed.2d 782 (1967). Only by entering the house and searching for persons and weapons could the agents have control of all weapons which could be used against them or to effect an escape. The societal costs of delay outweighed the social interest in resort to a neutral magistrate in this instance. The exigencies of this situation made the warrantless entry lawful.[7]

▮ There is also a second reason why this warrantless entry was constitutional. Law enforcement officers who have lawfully apprehended a suspect on a portion of a structure (here it was an open porch built as a part of the home) which they have reason to believe contains dangerous third persons who might pose a threat to their safety have a right to conduct a reasonable security check of such premises. *See, e.g., United States v. Blasco,* 702 F.2d 1315, 1326 (11th Cir.1983); *United States v. Gomez,* 633 F.2d 999, 1008 (2d Cir.1980), *cert. denied,* 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 194 (1981). The security check conducted in this instance was reasonable under all of the existing circumstances. The agents in this case had observed another male helping Mr. Burgos unload the car. The possibility of an arsenal being stored in the house was very great. These officers had ample justification for concern about their safety. The agents in this case did not go very far. They pushed open the front door and found boxes of firearms everywhere. They heard a noise in the house, went in as far as the kitchen, only to discover appellant's grandmother. Since Agent Kimbler had a right to be where he was at the time he saw the firearms, this court finds that the protective check was both constitutionally permissible and reasonable in scope.

In summary we hold that under the principles enunciated by the *en banc* court in *Berry,* the initial stop of Mr. Burgos was a seizure requiring reasonable suspicion and reasonable suspicion existed to support the seizure. Since Mr. Burgos' apparent consent for the officers to enter his home was elicited in violation of his *Miranda* rights there was no valid consent. Probable cause and exigent circumstances nonetheless justify the agents' subsequent search. Accordingly we find that the district court properly denied the motion to suppress.

▮ Having sustained the legality of the search of Mr. Burgos' home, we uphold

---

7. Since the entry was justified by exigent circumstances, the seizure of the firearms that were on the floor is also proper under the plain view doctrine. *Coolidge v. New Hampshire,* 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971).

appellant's convictions since a review of the record demonstrates that the trial judge could properly have concluded that there was sufficient evidence to convict appellant of conspiracy and properly denied the motion for judgment of acquittal.[8]

AFFIRMED.

---

**8.** Title 18 U.S.C. § 922(a)(1) provides in pertinent part:

It shall be unlawful

(1) for any person, except a licensed import, licensed manufacturer, or licensed dealer, to engage in the business of . . . dealing in firearms. . . .

In *United States v. Wilmoth,* 636 F.2d 123, 125 (5th Cir.1981), the court found that in order to have a violation of the statute the government must prove the status of the accused as one engaged in the business of dealing in firearms. To accomplish this it is enough to prove that the accused has guns on hand or is ready and able to procure them for the purpose of selling them from time to time to such persons as might be accepted as customers. The government must show a greater degree of activity than the occasional sale of a hobbyist. In this case the record establishes appellant's possession of a large supply of illegally purchased firearms and his willingness to sell and ship these firearms. This indicates a type of activity far greater than that engaged in by a hobbyist.