[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 30, 2007
THOMAS K. KAHN
CLERK

No. 06-15750
Non-Argument Calendar

_____

D. C. Docket No. 05-00171-CR-01-BBM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARK A. GROSSMAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(May 30, 2007)**

Before DUBINA, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Appellant Mark Grossman ("Grossman") appeals his convictions for attempting to entice a minor for sexual activity, in violation of 18 U.S.C. § 2422(b), and crossing state lines with the intent to engage in sexual activity with a person under 12 years of age, in violation of 18 U.S.C. § 2241(c). The evidence presented at pre-trial hearings and at Grossman's trial demonstrate the following. As part of his job, a special agent with the Federal Bureau of Investigation ("FBI") entered an internet chat room called "preteen, baby, and toddler sex" and assumed the identity of a 31-year-old woman with a 9-year-old daughter. In the chat room, Grossman initiated a one-on-one conversation with the agent and expressed an interest in engaging in sexual activity with the 9-year-old daughter. After several more conversations, Grossman indicated that he would drive from his home in Florida to meet the woman and her daughter in a certain restaurant parking lot in Buford, Georgia. Grossman indicated that he would bring lubricant, among other items. On the day of the planned meeting, agents waited for Grossman at the restaurant parking lot. Upon his arrival, the agents arrested Grossman. The agents also staged the arrest of a female FBI agent posing as the 31-year-old woman. Likewise, an agent loudly stated near Grossman that the 9-year-old had been placed in protective custody.

After his arrest, Grossman was transported to FBI headquarters in Atlanta

and interviewed by two agents. At the interview, the agents informed Grossman that they were investigating crimes of sexual exploitation of children. An agent then read Grossman a list of his rights that included a waiver provision. Grossman indicated that he understood these rights and did not have any questions concerning them and then initialed each enumerated right and signed the waiver provision. During the interview, the agents did not use any physical force or make any promises to get him to sign the waiver form. Grossman answered some questions, but eventually asked for an attorney. At that point, the interrogation ceased. The agents never informed Grossman that the 31-year-old woman and 9-year-old child did not exist. The entire interview lasted 20 minutes. During it, Grossman appeared to be thinking clearly and logically.

Also after his arrest, an agent drove Grossman's car to the FBI headquarters, where the agents searched the car. The agents did not have a search warrant. The FBI, however, had a policy of impounding an arrestee's car and making an inventory of the items contained therein to protect the arrestee's personal property and to protect itself from claims of theft. Inside Grossman's car, the agents found lubricant, Viagra, and a laptop computer, among other items.

Grossman's defense at his trial was that he never intended to engage in sexual activity with the 9-year-old girl, but only intended to have sex with the 31-year-old

3

woman. Accordingly, the government presented the testimony of another minor whose mother previously dated and lived with Grossman. This minor testified that she had awoken one night and found Grossman sitting next to her bed. Grossman removed her underwear and then touched and licked her vagina. Before admitting this testimony, the district court considered its prejudicial effect and ruled that is probative value to the trial outweighed any chance of undue prejudice. Likewise, after this testimony, the district court instructed the jury only to consider this evidence as it related to Grossman's intent to commit the offense with which he was charged. At the close of the trial, the district court repeated this limiting instruction.

On appeal, Grossman argues that (1) his statements made during a post-arrest interrogation should have been suppressed, as they were not made voluntarily; (2) items seized from his car should have been suppressed; and (3) the testimony of another minor that Grossman previously had molested her should have been suppressed, as its prejudicial effect greatly outweighed its probative value.

### *Post-arrest Statements*

The voluntariness of a confession is a question of law that we review *de novo*. *United States v. Barbour*, 70 F.3d 580, 584 (11th Cir. 1995). In *Miranda v. Arizona*, 384 U.S. 436, 444-445, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966), the Supreme Court held that prior to any custodial interrogation, a person "must be

4

warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."  If the person indicates at any point that he wishes to consult with an attorney before speaking, the interrogation must cease.  The person, however, may waive his rights, "provided the waiver is made voluntarily, knowingly and intelligently."  *Id*. at 444, 86 S. Ct. at 1612.  The Supreme Court later explained that the waiver is effective if the totality of the circumstances demonstrate that (1) it was voluntary "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and (2) it was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  *Moran v. Burbine*,  475 U.S. 412, 421, 106 S. Ct. 1135, 1141, 89 L. Ed. 2d 410 (1986).

In determining whether post-arrest statements were voluntary, we look to the "totality of the circumstances" and consider factors including whether the defendant was subjected to "an exhaustingly long interrogation," whether the interrogators applied physical force to the defendant or threatened to do so, and whether the interrogators made promises to induce the defendant's statements. *United States v. Thompson*, 422 F.3d 1285, 1295-96 (11th Cir. 2005), *cert. denied*, 127 S. Ct. 748 (2006).  Likewise, we consider the person's knowledge of the "substance of the

charge" against him. *West v. United States*, 399 F.2d 467, 469 (5th Cir. 1968) (determining the voluntariness of a juvenile's confession). Furthermore, in analyzing whether deception by the police undermined the voluntary nature of a statement, we have held that "the police's use of a trick alone will not render a confession involuntary." *United States v. Castaneda-Castaneda*, 729 F.2d 1360, 1363 (11th Cir. 1984).

Here, the record demonstrates that Grossman's waiver of his right to silence and counsel was knowing, voluntary, and intelligent, such that his post-arrest statements were admissible. *See Miranda*, 384 U.S. at 444-445, 86 S. Ct. at 1612. Before questioning Grossman, the FBI agent read him a list of rights. Grossman initialed each of these rights and signed a waiver form. The totality of the evidence suggests that this waiver was the product of free will rather than coercion. *See Burbine*, 475 U.S. at 421, 106 S. Ct. at 1141; *Thompson*, 422 F.3d at 1295 -1296. Grossman only was interviewed for 20 minutes, the FBI agents who interrogated him did not use physical force or make any promises, and Grossman was informed of the general substance of the charge against him. *See West*, 399 F.2d at 469; *Thompson*, 422 F.3d at 1295-96. The agents' use of the ruse that a real mother and daughter were involved, that the mother was arrested, and that the daughter was placed in protective custody does not diminish the non-coercive nature of the

6

interview. *See Castaneda-Castaneda*, 729 F.2d at 1363.

Likewise, the totality of the evidence in the record suggests that the waiver was not the product of a lack of comprehension. *See Burbine*, 475 U.S. at 421, 106 S. Ct. at 1141; *Thompson*, 422 F.3d at 1295-96. Rather, Grossman indicated that he understood his rights and had no questions about these rights and appeared to be thinking clearly and logically. Accordingly, because Grossman waived his rights and the totality of the circumstances demonstrates that his waiver was knowing, voluntary, and intelligent, we hold that his post-arrest statements were voluntary. *See Burbine*, 475 U.S. at 421, 106 S. Ct. at 1141; *Thompson*, 422 F.3d at 1295-96; *Barbour*, 70 F.3d at 584.

### *Search of Car and Seizure of Items in Car*

"A district court's denial of a motion to suppress presents a mixed question of law and fact." *United States v. Behety*, 32 F.3d 503, 510 (11th Cir. 1994). We review the district court's factual findings for clear error and the district court's application of law to the facts *de novo*. *Id.* In conducting this review, we construe the facts in a light most favorable to the successful party. *Id.*

The Supreme Court has held that searches and seizures conducted absent a search warrant granted by a judicial officer are *per se* unreasonable under the Fourth Amendment unless they fall within a limited set of well-defined exceptions.

*Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576 (1967).  One of these exceptions allows the police to conduct a warrantless search where they have probable cause and there exists exigent circumstances.  *United States v. Burgos*, 720 F.2d 1520, 1525 (11th Cir. 1983).  The purpose of this exception is to prevent a real danger that evidence might be lost.  *United States v. Bulman*, 667 F.2d 1374, 1384 (11th Cir. 1982).  Probable cause to support such a warrantless search exists where the facts would "lead a reasonably cautious person to believe that the search will uncover evidence of a crime."  *Burgos*, 720 F.2d at 1525 (quotation omitted).  The exigent circumstances to support such a warrantless search stem from "the ability of a vehicle to become mobile."  *United States v. Nixon*, 918 F.2d 895, 903 (11th Cir. 1990) (citation omitted).

Another of these exceptions covers inventory searches.  *Illinois v. Lafayette*, 462 U.S. 640, 643, 103 S. Ct. 2605, 2608, 77 L. Ed. 2d 65 (1983).  In *Sammons v. Taylor*,  967 F.2d 1533 (11th Cir. 1992), this court defined the parameters of this exception as follows:

> Even if an arrestee's vehicle is not impeding traffic or otherwise presenting a hazard, a law enforcement officer may impound the vehicle, so long as the decision to impound is made on the basis of standard criteria and on the basis of "something other than suspicion of evidence of criminal activity."  If the vehicle has been lawfully impounded, the law enforcement officer may conduct an inventory search, including a search of closed containers, provided the search is conducted pursuant to standardized criteria.

8

*Id.* at 1543.  We had held that "if an inventory search is otherwise reasonable, its validity is not vitiated by a police officer's suspicion that contraband or other evidence may be found" inside the car.  *United States v. Staller*,  616 F.2d 1284, 1290 (5th Cir. 1980) (citation omitted).  There are three interests that justify this exception, namely (1) protection of the owner's property that might be in the car, (2) protection of the police from false claims of lost possessions, and (3) protection of the police from potential danger.  *Id.* at 1289.

The record demonstrates that the search of Grossman's car fell within two exceptions to the warrant requirement.  First, the agents had probable cause to believe that incriminating evidence might be found in Grossman's car, as he had indicated that he would bring lubricant to his meeting with the woman and her daughter, and the car was mobile.  *See Burgos*, 720 F.2d at 1525; *Nixon*, 918 F.2d at 903.  Thus, the items seized from Grossman's car were admissible under the exigent circumstances exception.  *See id.*  Second, the impoundment and search of Grossman's car was conducted pursuant to the FBI's policy of making an inventory of an arrestee's personal property.  *See Sammons*,  967 F.2d at 1543.  The fact that the agents may have expected to find incriminating evidence in his car does not affect the validity of this search. *See  Staller*,  616 F.2d at 1290.  Thus, the items seized from Grossman's car also were admissible under the inventory search

9

exception. *See Sammons*, 967 F.2d at 1543.

### *Witness's Testimony of Prior Bad Act*

Rule 404(b) of the Federal Rules of Evidence permits the admission of other crimes, wrongs, or acts as evidence to show, *inter alia*, motive, preparation, knowledge, and/or intent, but such evidence is not admissible to show the "character of a person" or his "action in conformity therewith." Fed.R.Evid. 404(b); *See United States v. Cross*, 928 F.2d 1030, 1047-48 n.65 (11th Cir. 1991). For such "other crimes evidence" to be admissible, (1) it must be relevant to an issue other than the defendant's character, (2) the defendant's commission of the prior act must be established by sufficient proof, and (3) the probative value of the evidence must outweigh its prejudicial effect and meet the other requirements of Fed.R.Evid. 403.[1] *United States v. Dickerson*, 248 F.3d 1036, 1046-1047 (11th Cir. 2001). To establish the relevance prong of this test where intent is at issue, the district court must determine "that the extrinsic offense requires the same intent as the charged offense." *Id.* at 1047 (internal quotation and citation omitted). To establish the proof prong of this test, "the uncorroborated word of an accomplice" is sufficient. *Id.* (citation omitted). Finally, to satisfy the Rule 403 prong of this test,

---

[1] Rule 403 provides that: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

the district court may consider the necessity of the evidence to the government's case. *Id.* Moreover, the district court's "careful limiting instructions" can reduce the potential prejudice of evidence, such that it is admissible. *United States v. Palmer*, 809 F.2d 1504, 1505-1506 (11th Cir. 1987). The district court's admission of other crimes evidence under Rule 404(b) will not be reversed absent an abuse of discretion. *See Cross*, 928 F.2d at 1047.

We conclude from the record that the district court did not abuse its discretion in admitting the minor's testimony. *See Cross*, 928 F.2d at 1047. Her testimony that Grossman had sexually molested her was relevant to the issue of Grossman's intent to engage in sexual activity with the 9-year-old child. The earlier offense of child molestation and the offenses charged, namely attempting to entice a child to engage in an act that would constitute child molestation and crossing state lines to molest a child, involved the same intent and general purpose, specifically engaging in unlawful sexual acts with a minor. *See Dickerson*, 248 F.3d at 1046-1047. Also, her testimony alone constituted sufficient proof of the defendant's commission of the earlier act of child molestation. *See id.* Finally, the probative value of the testimony outweighed its prejudicial effect, in that Grossman himself put his intent at issue by stating that he did not intend to have sex with the 9-year-old, thereby making the minor's testimony necessary to the government's

11

case.  Moreover, the district court gave two limiting instructions regarding this evidence.  *See Dickerson*, 248 F.3d at 1046-1047; *Palmer*, 809 F.2d at 1505-1506. The record demonstrates that the district court conducted the required Rule 403 balancing test before admitting the evidence and, therefore, we affirm the district court's ruling.  *See Dickerson*, 248 F.3d at 1046-1047.

### *Conclusion*

For the above-stated reasons, we affirm Grossman's convictions.

**AFFIRMED.**