[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 12, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-10005
Non-Argument Calendar

_____

D. C. Docket No. 05-00187-CR-E

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SAWELIJA TYREE FLOYD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(July 12, 2007)**

Before TJOFLAT, HULL and FAY, Circuit Judges.

PER CURIAM:

Sawelija Tyree Floyd appeals his convictions for possession with the intent to distribute cocaine base, marijuana, cocaine hydrochloride, and MDMA,[1] all in violation of 21 U.S.C. § 841(a)(1). On appeal, Floyd argues that the district court erred in denying his motion to suppress evidence because the arresting officers did not rely in good faith upon an invalid arrest warrant and, furthermore, there existed no probable cause or exigent circumstances supporting the officers' entry into his home. The district court determined that the arresting officers reasonably relied in good faith upon the arrest warrant because there was no evidence that the officers influenced the issuing judge, that the judge acted outside of his judicial role, or that the arrest warrant was so facially deficient as to prevent the officers from reasonably presuming its validity. Additionally, the court concluded that, because Floyd was a known drug dealer, a smell of burning marijuana emanated from Floyd's house, and there were multiple occupants of the house, the officers had probable cause and exigent circumstances to enter. For the reasons set forth more fully below, we affirm.

## I. Background

A federal grand jury issued an initial two-count indictment against Floyd, charging him with possession with the intent to distribute cocaine base and

_____

[1] 3,4-methylenedioxymethamphetamine.

2

marijuana, in violation of § 841(a)(1).[2]  Thereafter, Floyd filed a motion to suppress statements taken and physical evidence seized as a result of his arrest and subsequent search of his home.  In his motion, Floyd argued that the police officers did not have a legitimate warrant or probable cause to approach his house in the first instance.  He further asserted that the initial opening of his house was not consensual and did not create probable cause or exigent circumstances.  He concluded that, because the warrantless search was illegal, the subsequent search warrant, which the officers secured after entering the house, was also invalid because it was based upon evidence discovered during the warrantless search.

The following factual history is taken from the testimony of the government's witnesses at Floyd's suppression hearing.  The basic underlying facts are undisputed.

On July 27, 2005, Sergeant Chris Murray and Lieutenant Jerry Holder, both of the Auburn, Alabama Police Department, met with Municipal Judge Joe Bailey regarding individuals who were involved in one of the officers' other investigations.  The officers asked Judge Bailey to review the files of those individuals in connection with that investigation.  In so doing, Judge Bailey

---

[2]After the suppression hearing, a federal grand jury returned a four-count superseding indictment against Floyd, charging him with possession with the intent to distribute: (1) cocaine base; (2) marijuana; (3) cocaine hydrochloride; and (4) MDMA/ecstasy, all in violation of § 841(a).

reviewed Floyd's file and determined that the file indicated that Floyd had violated a pre-existing order. Thus, Judge Bailey issued a Violation of Court Order ("VCO") warrant for Floyd's arrest. The officers testified that they did not request that Judge Bailey issue a VCO for Floyd and they did not know the exact violation for which Judge Bailey issued Floyd's VCO. The VCO identified Floyd by name, but it did not include a case number or indicate which order Floyd had violated, and it was not filed in the clerk's office. The officers also indicated that they routinely relied upon VCOs in making arrests and that they knew Judge Bailey routinely issued such VCOs. According to Judge Bailey, he typically issued VCOs and wrote them from a standard form on his computer.

On July 29, 2005, Sergeant Murray and six other officers executed the outstanding VCO, which was a misdemeanor warrant, at Floyd's home. Because the officers had information from confidential informants ("CI") that Floyd was a substantial drug-dealer, they utilized a group of officers to execute the arrest warrant. Four officers went to Floyd's front door and knocked. A male's voice came from inside the house and asked, "Who is it?" The officers responded that it was the police and that they should open the door. Seconds later, Jamillah McCray, Floyd's girlfriend, opened the door. The officers inquired into Floyd's whereabouts. Almost immediately, Floyd approached the door, officers informed

4

him that they had a warrant for his arrest, and the officers took him into custody outside of his house. However, when McCray first opened the door, the officers smelled the odor of burning marijuana emanating from inside the house.

Thereafter, the officers stepped inside the house, where McCray and J.B. Mitchell were located. Upon entering the house, Sergeant Murray saw three or four large pieces of crack cocaine on the kitchen counter-top. Sergeant Murray asked who had been smoking marijuana, and Mitchell answered that he and Floyd had been smoking just prior to the officers' knocking on the door. Sergeant Murray then asked for permission to search the house, but both Floyd and McCray declined permission. At that point, Sergeant Murray left to obtain a search warrant. Once he obtained a search warrant, the officers executed it and located crack cocaine, marijuana, powder cocaine, $3000, and other drug paraphernalia in the house.

After the suppression hearing, the magistrate judge considered the evidence and the parties' post-hearing briefs and recommended denying Floyd's motion to suppress. The district court adopted the magistrate's report and recommendation, over Floyd's objections, and denied Floyd's motion to suppress. Floyd then pled guilty to all four counts of his superseding indictment. In his plea agreement with the government, Floyd reserved his right to appeal the denial of his motion to

5

suppress.  The court sentenced Floyd to 210 months' imprisonment.

## II.  Discussion

We review the district court's denial of a defendant's motion to suppress under a mixed standard of review, reviewing the court's findings of fact for clear error and application of the law to those facts de novo.  United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006), cert. denied, ___ U.S. ___, 127 S.Ct. 990, 166 L.Ed.2d 747 (2007).  Moreover, we will "construe the facts in the light most favorable to the party who prevailed below."  United States v. Muegge, 225 F.3d 1267, 1269 (11th Cir. 2000).

The Fourth Amendment provides that: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. amend. IV.  We have held that warrantless searches and seizures inside a person's home are presumptively unreasonable.  United States v. Burgos, 720 F.2d 1520, 1525 (11th Cir. 1983).

**(A)  Good Faith Reliance On Invalid VCO**[3]

Generally, the Fourth Amendment excludes from a criminal prosecution evidence that has been seized as a result of an illegal search.  United States v. Martin, 297 F.3d 1308, 1312 (11th Cir. 2002).  However, one exception to the

---

[3]The government concedes that the VCO that Judge Bailey issued for Floyd's arrest was invalid under Alabama law.  Thus, we need not address the issue of the validity of the VCO.

exclusionary rule is the good faith exception, as carved out by the Supreme Court in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Martin, 297 F.3d at 1312.  As such, we must first determine whether the executing officers in Floyd's case nevertheless relied upon the invalid VCO in good faith.

In Leon, the Supreme Court held that courts generally should not exclude evidence seized by officers acting in reasonable reliance upon a search warrant that ultimately was found to be invalid.  Leon, 468 U.S. at 922, 104 S.Ct. at 3420.  The good faith exception applies in all but four circumstances:

> (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role . . . ; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient - i.e., in failing to particularize the place to be searched or the things to be seized - that the executing officers cannot reasonably presume it to be valid.

Martin, 297 F.3d at 1313 (quotations and citation omitted).  The Leon good faith analysis has been invoked in cases involving invalid arrest warrants, as opposed to an invalid search warrant, as was the case in Leon.  See Arizona v. Evans, 514 U.S. 1, 14-15, 115 S.Ct. 1185, 1187, 1193-94, 131 L.Ed.2d 34 (1995).  "The purpose of the exclusionary rule is to deter unlawful police misconduct; therefore, when

7

officers engage in objectively reasonable law enforcement activity and have acted in good faith when obtaining a search warrant from a judge or magistrate, the Leon good faith exception applies." Martin, 297 F.3d at 1313 (quotation omitted).

Floyd argues on appeal that the circumstances in his case fit into at least two of the four limitations to the good faith rule. Reviewing the facts of this case under each limitation to the good faith exception, we conclude that none of the limitations apply. First, the testimony from the suppression hearing indicates that there existed no affidavit from the officers upon which Judge Bailey relied in issuing the VCO. While the officers did ask Judge Bailey to review Floyd's file in connection with a separate investigation, they unequivocally testified that they did not request that Judge Bailey issue the VCO. Judge Bailey confirmed that he issued the VCO of his own volition. Therefore, the first limitation to the good faith exception does not apply because there was no affidavit that could have misled Judge Bailey. Similarly, the third limitation to the good faith exception also does not apply because there existed no affidavit that could have been so lacking in probable cause as to render official belief in its validity unreasonable.

As to the second limitation to the good faith exception, namely, that the issuing judge abandoned his judicial role, the evidence does not support such a conclusion. Judge Bailey testified that, while he was asked by the officers to

8

review Floyd's file, his independent review of the file revealed facts that he believed warranted the recall of Floyd's probation. There was no testimony at the hearing to indicate that Judge Bailey was influenced in any way by the officers or their desire to speak with Floyd regarding the other investigation. To the extent that Floyd argues that the officers asked Judge Bailey to issue the VCO, the record stands contrary to that assertion. Thus, there is no evidence to suggest that Judge Bailey abandoned his judicial role in issuing the VCO for Floyd's arrest. Moreover, the evidence supports the conclusion that the error that caused the invalidity of the VCO was solely attributable to Judge Bailey, and, thus, exclusion under the second limitation here would not further the purpose of the exclusionary rule, namely, to deter police misconduct. See Evans, 514 U.S. at 11-12, 115 S.Ct. at 1191-92 (reiterating that "there was no sound reason to apply the exclusionary rule as a means of deterring misconduct on the part of judicial officers who are responsible for issuing warrants" because such exclusion would not meet the ultimate goal of deterring police misconduct).

Finally, the record does not support a conclusion that the VCO was so facially deficient as to prevent the officers from reasonably presuming its validity. The Fourth Amendment provides that, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be

searched, and the persons or things to be seized." U.S. Const. amend. IV. Judge Bailey's VCO identified Floyd by his full name and indicated that, "[f]or good cause shown, it is the Court's opinion that [Floyd] should be taken into custody . . . to serve the balance of the sentence(s) of incarceration heretofore suspended." The officers testified that they observed Judge Bailey review Floyd's file and find that he had violated a term of his probation. While the officers were unclear as to the exact violation, they nonetheless witnessed the judge perform an independent review and reach that conclusion. Furthermore, the officers routinely relied upon judge-issued VCOs and Judge Bailey routinely issued them from a standard form on his computer.

As to the missing case number on the VCO, Sergeant Murray testified that he believed that the number was missing because Judge Bailey wanted to avoid alerting the clerk's office due to the on-going White investigation. Despite the fact that such a motivation for leaving a case number off of a court order is arguably questionable, the officer's testimony nevertheless supplied a reason why he believed the number was missing. The magistrate observed the officer's testimony and obviously found it credible. See United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002) (stating that credibility determinations are typically within the province of the fact finder). Additionally, Judge Bailey explained that

the missing case number was an inadvertent mistake on his part. As such, considering the totality of the circumstances, the officers had no reason to believe from the face of the VCO that it was invalid.

**(B) Entry Into And Search Of Floyd's Home**

As discussed above, warrantless entries into and searches inside a person's home are presumptively unreasonable. United States v. Santa, 236 F.3d 662, 668 (11th Cir. 2000). With regard to an officer's entry into a person's home, a person does not show consent to enter when the consent is prompted by an official show of authority. Ramirez-Chilel, 289 F.3d at 751. However, as to warrantless searches, they may be justified where both probable cause and exigent circumstances exist. United States v. Tobin, 923 F.2d 1506, 1510 (11th Cir. 1991). "Probable cause exists when under the totality-of-the-circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. In other words . . . where the facts lead a reasonably cautious person to believe that the search will uncover evidence of a crime." Id. (citation and quotations omitted). Exigent circumstances may exist where there is a danger that evidence will be destroyed or removed. Id. However, "the presence of contraband without more does not give rise to exigent circumstances," but such circumstances may arise where there is a danger that the contraband will be destroyed. Id.

11

(quotation omitted). "This Court has held that the need to invoke the exigent circumstances exception to the warrant requirement is particularly compelling in narcotics cases because narcotics can be so quickly destroyed." Id. (quotation omitted). In determining whether exigent circumstances existed, we employ the following objective test: "whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured." United States v. Young, 909 F.2d 442, 446 (11th Cir. 1990).

Here, Floyd's assertion that the officers violated his Fourth Amendment rights by inducing McCray to open the front door without consent is meritless. It is noteworthy that Floyd is not arguing that the officers gained non-consensual entry into his home, but rather that they induced a non-consensual opening of his front door. However, it is not unconstitutional for an officer to approach an individual's home and knock on the door when the officer has an arrest warrant for that individual. See, e.g., United States v. Bervaldi, 226 F.3d 1256, 1263, 1267 (11th Cir. 2000) (holding that police officers did not violate a person's Fourth Amendment rights by entering the person's home where the officers had an arrest warrant for a suspect, went to the address that they believed was the suspect's home, believed the suspect was inside the home, knocked on the door, and later

12

entered the house); see also Payton v. New York, 445 U.S. 573, 602-03, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639 (1980) (holding that, once an arrest warrant has been issued, it is constitutionally reasonable to require the suspect to open the doors of his home to police officers because "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within"). Moreover, there is nothing in the record to support the contention that McCray's decision to open the door was non-consensual. The officers did not have their weapons drawn, yell at McCray, or pound on the door. See Ramirez-Chilel, 289 F.3d at 751 (concluding that officers did not gain entry into a suspect's home by a show of force where the officers did not draw their weapons or surround the house, and where the suspect did not exhibit intimidated behavior when he opened the door).

With regard to the officers' eventual entry into Floyd's home, Floyd maintains that the smell of burning marijuana alone did not provide the necessary probable cause or exigent circumstances. Floyd's argument is without merit. The officers approached Floyd's house armed with an arrest warrant that they believed was valid and information that Floyd was a drug dealer. The officers knocked on the door, inquired as to Floyd's

13

whereabouts, and arrested Floyd when he stepped outside of his house. However, when McCray opened the door, the officers smelled burning marijuana emanating from the house. At that point, the officers had probable cause because their knowledge of Floyd's drug-dealing habits and the smell of burning marijuana reasonably could have led them to believe that a search would reveal evidence of a crime. See Tobin, 923 F.2d at 1510. The facts as they existed at the time that the officers smelled the burning marijuana also established that exigent circumstances existed because those facts would have led a reasonable officer to believe that McCray or someone else inside the house would attempt to destroy the drugs before they could secure a warrant. See Young, 909 F.2d at 446; see also Tobin, 923 F.2d at 1510 (explaining that "the need to invoke the exigent circumstances exception to the warrant requirement is particularly compelling in narcotics cases because narcotics can be so quickly destroyed") (quotation omitted). Given the information the officers had regarding Floyd's drug-dealing history, coupled with the smell of burning marijuana and the fact that there were other occupants in Floyd's home, this is not a case where the only information the officers had was the existence of drugs alone.

14

Floyd lastly argues that, because the officers' entry into his home was unconstitutional, the search warrant that they subsequently obtained was invalid because it was based upon information that the officers obtained from their illegal entry. See United States v. Terzado-Madruga, 897 F.2d 1099, 1112 (11th Cir. 1990) (explaining that the exclusionary rule also applies to evidence obtained from illegal conduct or "fruit of the poisonous tree"). However, in light of the above discussion of the legality of the officers' initial entry into Floyd's home, his argument that the subsequent search warrant was based upon fruit of a poisonous tree is meritless.

### III.  Conclusion

In sum, the officers relied in good faith upon the invalid VCO arrest warrant in initially approaching Floyd's home. Moreover, the officers did not unconstitutionally knock on Floyd's door or enter his house based upon the smell of burning marijuana emanating from the house. Accordingly, we conclude that the district court did not err in denying Floyd's motion to suppress. Thus, Floyd's convictions are

**AFFIRMED.**