[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-11275; 15-12390
Non-Argument Calendar

_____

D.C. Docket No. 1:14-cr-20499-DMM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KATEENA RENA NORMAN,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(January 27, 2016)

Before MARCUS, WILLIAM PRYOR and FAY, Circuit Judges.

PER CURIAM:

Kateena Rena Norman appeals her convictions and 96-month total sentence

for three counts of credit-card fraud, in violation of 18 U.S.C. § 1029(a)(2), and six

counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). On appeal, Norman argues that: (1) the district court erred in denying her motion to suppress evidence obtained during the warrantless "security sweep" of her home immediately following her arrest on an arrest warrant; (2) the district court erred in allowing victims to testify at trial about how the credit card fraud affected their lives; and (3) the district court clearly erred in calculating the intended loss attributable to her and the amount of restitution. After thorough review, we affirm.

A district court's ruling on a motion to suppress presents a mixed question of law and fact. United States v. Timmann, 741 F.3d 1170, 1177 (11th Cir. 2013). We review the district court's factual findings for clear error and the court's application of the law to the facts de novo. Id. We allot deference to the district court in reaching credibility determinations with respect to witness testimony. United States v. McPhee, 336 F.3d 1269, 1275 (11th Cir. 2003). We review a district court's admission of evidence for abuse of discretion. United States v. Ruiz, 253 F.3d 634, 639-40 (11th Cir. 2001). We review the district court's amount-of-loss determination for clear error. United States v. Nosrati-Shamloo, 255 F.3d 1290, 1291 (11th Cir. 2001). We review the legality of a restitution order de novo and the underlying factual findings for clear error. United States v. Baldwin, 774 F.3d 711, 728 (11th Cir. 2014), cert. denied, 135 S. Ct. 1882 (2015).

2

First, we are unpersuaded by Norman's claim that the district court erred in denying her motion to suppress. A warrantless search inside a home is, with few exceptions, unreasonable under the Fourth Amendment. Kyllo v. United States, 533 U.S. 27, 31 (2001). However, a warrantless search is permissible when both probable cause and exigent circumstances exist. United States v. Tobin, 923 F.2d 1506, 1510 (11th Cir. 1991) (en banc). The Supreme Court has also recognized that a properly limited "protective sweep," conducted incident to an arrest, is reasonable under the Fourth Amendment "when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." Maryland v. Buie, 494 U.S. 325, 337 (1990). A "protective sweep" must be "narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Id. at 327. If there is sufficient justification, a properly limited protective sweep may occur "in conjunction with an in-home arrest." Id. at 337.

We have expanded the scope of a protective sweep to situations in which a defendant was arrested in a "portion of a structure" outside the residence. United States v. Burgos, 720 F.2d 1520, 1526 (11th Cir. 1983). In Burgos, we held that a protective sweep of a home following an arrest on an open porch built as part of the home was constitutionally permissible. There, officers had observed the defendant and another individual unloading illegal guns into the home immediately

3

prior to the arrest -- thus, there was a significant possibility that both an arsenal and a dangerous third person might be inside.  Id.  We also noted that the sweep was reasonable in scope because agents went only so far as the kitchen.  Id.  Similarly, in United States v. Yeary, we held that a protective sweep was permissible where officers had an arrest warrant, the defendant exited the home and was arrested, and the officers spotted a firearm inside the home in plain view and learned of the presence of two unknown individuals.  740 F.3d 569, 580 (11th Cir. 2014).

Under the inevitable discovery exception to the exclusionary rule, evidence obtained unlawfully may be admissible if the government can establish by a preponderance of the evidence that it ultimately or inevitably would have been discovered by lawful means.  See Nix v. Williams, 467 U.S. 431, 444 (1984).  But the government must do more than merely assert that the unlawfully obtained information would have been inevitably discovered through lawful means.  See United States v. Virden, 488 F.3d 1317, 1322 (11th Cir. 2007).  Rather, it must demonstrate that "the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct."  Id. (emphasis omitted and quotation omitted).  In other words, the government must show "that the police would have obtained the evidence by virtue of ordinary investigations of evidence or leads already in their possession."  Id. at 1323 (quotation omitted).

Here, the district court did not err in denying Norman's motion to suppress. As in Burgos and Yeary, the fact that Norman was arrested as she stepped outside the house did not prevent officers from conducting a protective sweep inside the home, provided the sweep was otherwise permissible. As the record reflects, when the officers arrested Norman they saw another woman inside the home and at least one caged pit bull and two cages. They also had reason to believe that Norman's boyfriend, who had a criminal record and was believed to be involved in the identify theft scheme, could be inside and could fear arrest. These details provided specific, articulable facts under which officers could reasonably justify a limited sweep in order to secure their safety. In addition, the sweep was reasonable in scope. It was conducted quickly -- in a minute or less, according to testimony -- and the house was small. Further, there is no indication that officers searched areas in which a person could not hide. Thus, the protective sweep was reasonable.

In any event, the evidence obtained from the house was admissible under the inevitable discovery doctrine. As Norman conceded at the suppression hearing, ample independent evidence was listed to justify a search warrant before the sweep, including video footage, photo identification, and other evidence related to the ongoing investigation of Norman's identity-theft ring. Officers were also in the process of verifying a fingerprint on a fraudulent check given at a casino, which would have provided further justification for a search warrant after the sweep. In

addition, officers had reason to believe they would find evidence of her crimes inside the home. A 2011 search of Norman's home revealed credit cards, newly purchased merchandise, and notebooks with persons' identifying information. Plus, officers had information from 2013 suggesting that Norman continued to engage in the fraudulent activities at her home, including a Comcast Internet account registered to her address that was being used to apply for fraudulent credit cards, and a fraudulently obtained rental car found parked at Norman's address. For these reasons, the district court did not err in denying the motion to suppress.

Next, we reject Norman's claim that the district court erred in allowing victims to testify. Relevant evidence is generally admissible, and evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Fed. R. Evid. 401, 402; see Allison v. McGhan Med. Corp., 184 F.3d 1300, 1309-10 (11th Cir. 1999) (explaining that the rules generally favor "liberal admission of evidence"). Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "The term 'unfair prejudice' . . . speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof

specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180 (1997). Rule 403 is "an extraordinary remedy that should be used sparingly," and in reviewing Rule 403 issues we "look at the evidence in the light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." United States v. Flanders, 752 F.3d 1317, 1335 (11th Cir. 2014) (quotation omitted), cert. denied, 135 S. Ct. 1188 (2015). We also "look to the evidence as a whole and determine whether the specific evidence questioned by [the defendant] was admissible under Rules 401-403 in light of all the evidence that was ultimately before the court." United States v. Merrill, 513 F.3d 1293, 1301 (11th Cir. 2008).

But even if an evidentiary ruling is erroneous, we will not reverse if the error was harmless. United States v. Khanani, 502 F.3d 1281, 1292 (11th Cir. 2007). An error is harmful if, in light of the entire record, there is a reasonable likelihood it affected the defendant's substantial rights. Id. "[W]hen the record contains sufficient independent evidence of guilt, any error was harmless." United States v. Newsome, 475 F.3d 1221, 1227 (11th Cir. 2007).

The elements of access device fraud are: knowingly and with intent to defraud trafficking in one or more unauthorized access devices during any one-year period, and by such conduct obtaining anything of value aggregating $1,000 or more. 18 U.S.C. § 1029(a)(2). The elements of aggravated identify theft are:

knowingly and without lawful authority producing an identification document, authentication feature, or a false identification document in or affecting interstate or foreign commerce.  18 U.S.C. § 1028A(a)(1).

In this case, we agree that the district court abused its discretion by admitting the victim-impact testimony at trial because it was both irrelevant and unduly prejudicial.  Nevertheless, the error was harmless.  The statements themselves were brief moments in a two-day trial, and they did not impact Norman's substantial rights in light of the overwhelming amount of additional evidence, including additional relevant testimony by victims as well as testimony by local and federal investigators and store employees, as well as financial statements, video surveillance footage, and fraudulent credit cards, ledgers and other documents found in Norman's home along with high-end merchandise and cash.  Thus, any possible prejudice engendered by the statements were more than outweighed by the other evidence.

Finally, we are unconvinced by Norman's argument that the district court clearly erred in calculating the intended loss attributable to her at $801,634.35 and the amount of restitution at $506,352.36.  The government bears the burden of establishing the attributable loss by a preponderance of the evidence.  United States v. Dabbs, 134 F.3d 1071, 1081 (11th Cir. 1998).  Thus, a defendant's uncharged relevant conduct may be taken into account if the government proves the conduct

8

by a preponderance of the evidence.  United States v. Faust, 456 F.3d 1342, 1347 (11th Cir. 2006).  Relevant conduct may include "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant," plus all reasonably foreseeable acts and omissions of others in furtherance of a jointly undertaken criminal activity, whether or not the scheme is charged as a conspiracy.  U.S.S.G. § 1B1.3(a)(1)(A)-(B).

At the time of the sentencing, the guidelines concerning fraud provided for a 14-level increase to base offense level if the loss from the offense was more than $400,000 but less than $1,000,000.  U.S.S.G. § 2B1.1(b)(1)(H).  The general rule in calculating loss is that it is the greater of actual or intended loss.  U.S.S.G. § 2B1.1, comment. (n.3(A)).  "Actual loss" is the "reasonably foreseeable pecuniary harm that resulted from the offense."  U.S.S.G. § 2B1.1, comment. (n.3(A)(i)). "Intended loss" includes "intended pecuniary harm that would have been impossible or unlikely to occur."  U.S.S.G. § 2B1.1, comment. (n.3(A)(ii)). "[O]nce a defendant has gained access to a certain credit line by fraudulently applying for credit cards, a district court does not err in determining the amount of the intended loss as the total line of credit to which [d]efendant could have access." Nosrati-Shamloo, 255 F.3d at 1291.

Here, the district court did not clearly err in finding that Norman qualified for a 14-level increase based on the amount of loss involved.  The government

9

provided sufficient evidence to establish that she was a central player in a credit-card-fraud scheme with actual and intended losses exceeding $400,000. Specifically, the government showed actual losses totaling $506,352.36, and total intended losses of $801,634.35, based on the fraudulent use of victims' credit accounts and personal information. All of the losses listed in the government's chart involve credit accounts for which Norman had either actual credit cards and identification, or detailed information on the ledgers found in her home. Further, the total losses were reasonably foreseeable to Norman because she personally possessed all of the relevant financial and personal information that was used in calculating the loss amounts, and she personally caused some of them. Indeed, the ledgers, stacks of cards and identification, high-end merchandise, and a large amount of cash found at Norman's residence, coupled with the evidence of actual losses incurred by Norman through purchases at Home Depot, Seminole Casino, and U-Rock, indicates that Norman's residence was a repository of information about the scheme, and Norman was clearly a player in it.

As for restitution, this amount must be based on the amount of loss actually caused by the defendant's conduct. Baldwin, 774 F.3d at 728 (quotation omitted). The district court may accept a reasonable estimate of loss based on the evidence presented. Id. The government bears the burden of establishing the amount of restitution by a preponderance of the evidence. Id.; see also 18 U.S.C. § 3664(e).

10

Under the Mandatory Victims Restitution Act ("MVRA"), the district court must order restitution in the full amount of the victim's loss. 18 U.S.C. § 3663A; United States v. Thayer, 204 F.3d 1352, 1357 n.7 (11th Cir. 2000). When more than one defendant contributes to the loss, each defendant may be held liable for payment of the full restitution amount, or liability may be apportioned among the defendants to reflect their respective level of contribution to the loss and their economic circumstances. 18 U.S.C. § 3664(h); Baldwin, 774 F.3d at 729.

In this case, the district court did not clearly err in finding that Norman played a central role in a large-scale credit-card and identity theft scheme and, as a result, could be held liable for the total amount of victims' actual losses from the scheme. Under the MVRA, restitution is based on the amount of loss, and that total amount of losses incurred by victims was determined to be $506,352.36. Although the government could only prove $187,100.36 in losses attributable to her personal conduct, the evidence sufficiently established that Norman's activities were part of a larger scheme, and that the whole scheme's losses were aided and abetted by or reasonably foreseeable to her.

**AFFIRMED**.