[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 11, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-10872
Non-Argument Calendar
_____

D. C. Docket No. 06-00120-CR-3-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LARRY BUD SIMPSON, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

**(December 11, 2007)**

Before TJOFLAT, BLACK and FAY, Circuit Judges.

PER CURIAM:

Larry Bud Simpson, Jr. appeals his conviction for unlawful possession of a firearm, a short-barreled shotgun, as defined in 26 U.S.C. § 5845(a), in violation of 26 U.S.C. §§ 5861(d) and 5871. Simpson argues that the district court erred by denying his motion to suppress the fruits of a warrantless entry into and search of his house, asserting that officers exceeded the scope of the consent they received from his girlfriend, Laura O'Neill, to enter the house when they handcuffed and detained the occupants, including minor children. For the reasons set forth more fully below, we affirm.

"A district court's ruling on a motion to suppress presents a mixed question of law and fact." United States v. Zapata, 180 F.3d 1237, 1240 (11th Cir. 1999). We accept the district court's factual findings as true unless the findings are shown to be clearly erroneous. Id. All facts are construed in the light most favorable to the prevailing party below. United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000). The district court's application of the law to the facts is reviewed de novo. Id.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "It is indeed a basic principle of Fourth Amendment law that searches and seizures inside a home

2

without a warrant are presumptively unreasonable." United States v. McGough, 412 F.3d 1232, 1237 (11th Cir. 2005) (quotations omitted). Nevertheless, in the absence of probable cause or reasonable suspicion, law enforcement officers may search an individual or his property without a warrant, so long as the individual voluntarily consents to the search. Schneckloth v. Bustamonte, 412 U.S. 218, 219-22, 93 S.Ct. 2041, 2043-45, 36 L.Ed.2d 334 (1993).

"A consensual search is confined to the terms of its authorization." United States v. Strickland, 902 F.2d 937, 941 (11th Cir. 1990) (citations omitted). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness -- what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991); see Strickland, 902 F.2d at 942 (indicating that the proper scope of a consensual search is "constrained by a reasonable interpretation of [the] statement of consent"). "To ascertain what conduct is within the 'bounds of reasonableness,' we must consider what the parties knew to be the object (or objects) of the search. . . . [C]onsent to search for specific items includes consent to search any [area] that might reasonably contain those items." Zapata, 180 F.3d at 1243.

Here, O'Neill voluntarily consented to allow Deputy Taylor to enter Simpson's house and to search it for guns and injured persons. Officers responded to a report that shots were fired from Simpson's house. A deputy sheriff approached the house and observed people inside. He knocked on the door two to three times and identified himself as a law enforcement officer. O'Neill opened the front door and the deputy explained that he was responding to a report that gunshots had been fired at the house. He asked for permission to enter and search the house. Although O'Neill was initially reluctant to consent, the deputy explained that he only wanted to secure the gun and to look for any injured people who might be inside the house. In response, O'Neill opened the door and said "okay." At the time O'Neill consented, she was not under arrest or handcuffed. Moreover, the deputy did not draw his weapon at any time during his entry and search of the house and did not represent to O'Neill that he otherwise had the authority to search the house. See United States v. Ramirez-Chilel, 289 F.3d 744, 751 (11th Cir. 2002) (finding that the defendant did not "acquiesce[] to a show of official authority" where the officers did not have their guns drawn and the defendant "yielded the right-of-way," allowing the officers to enter the house); United States v. Garcia, 890 F.2d 355, 361 (11th Cir. 1989) (finding that officers' statements were not coercive because they did not represent to the defendant that

4

they could lawfully search his house without his consent).

To the extent that O'Neill's consent was limited by the deputy's explanation that he only wanted to search for guns and injured persons, the district court did not err in finding that the scope of the search and the officers' activities did not exceed those limitations. The record shows that once the deputy entered the house, he observed a gun case in plain view on the living room floor and subsequently directed O'Neill and another woman, who he found inside the living room, to sit in the dining area away from the gun case. Two more officers entered the house shortly thereafter and placed two men, who were handcuffed, inside the dining area. At some point, two minor children appeared, and the officers also placed them in the dining area with the adults. Although the deputy observed a gun case on the living room floor, he did not know if the gun was inside the case or if there were other guns inside the house. Moreover, he did not know whether there were any additional people hiding or injured inside the house. Accordingly, the deputy conducted a cursory search of the remaining rooms in the house, akin to a protective sweep. See United States v. Tobin, 923 F.2d 1506, 1513 (11th Cir. 1991) (holding that, in the context of an in-home arrest, a limited protective sweep is authorized "when the searching officer possesses a reasonable belief . . . that the area to be swept harbors an individual posing a danger to those on the arrest

5

scene"). During that search, he observed a backpack containing suspected marijuana in plain view. There is no evidence that the deputy otherwise engaged in a more extensive search. Accordingly, the district court did not clearly err by finding that the deputy had permission to search the house for guns and injured people and, thus, had the authority to look wherever those things might reasonably have been found. See Zapata, 180 F.3d at 1243.

Simpson's claim that the officers acted unreasonably and negated O'Neill's consent by handcuffing the adult occupants of the house and a teenage boy, is without merit. The record shows that when the officers approached the house, they smelled a strong odor of burning marijuana coming from inside the house. This, coupled with the fact that they were called to the scene to investigate a report that shots were fired, gave the officers reasonable suspicion to detain the occupants of the house. See United States v. Holloway, 290 F.3d 1331, 1340 (11th Cir. 2002) (citing Maryland v. Wilson, 519 U.S. 408, 413, 117 S.Ct. 882, 885, 137 L.Ed.2d 41 (1997) (holding that, during a traffic stop, an officer may order passengers out of a car, pending completion of investigatory stop, for protection of his own safety); Michigan v. Summers, 452 U.S. 692, 702-03, 101 S.Ct. 2587, 2594, 69 L.Ed.2d 340 (1981) (holding that officers conducting an in-home search pursuant to a warrant could detain the occupant of premises during the search based, in part, on

6

the potential risk of harm to the officers)).  Moreover, Simpson does not argue that the officers' actions constituted an illegal seizure in violation of the Fourth Amendment.  Accordingly, the officers' actions were not unreasonable and did not negate or exceed the scope of O'Neill's consent.

Because O'Neill's consent was voluntary and the officers' actions did not exceed the limitations of that consent, the officers were entitled to rely on any evidence they observed in plain view while inside the house.  The "plain view" doctrine, allows a warrantless seizure where "(1) an officer [was] lawfully located in the place from which the seized object could be plainly viewed and [had] a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent."  United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006).  For an item's incriminating character to be "immediately apparent," the police merely need probable cause to believe that the item is contraband.  Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 1542-43, 75 L.Ed.2d 502 (1983).  Here, during his brief search of the remaining rooms inside the house, the deputy found a backpack containing bags of a leafy green substance inside the bathtub and noticed a strong smell of marijuana.  Because the deputy was lawfully present inside the house and had consent to search any of the locations in the house where guns or injured people might be found, the district court did not err by finding that he

7

properly observed the suspected marijuana in plain view and had the authority to seize and secure the backpack.  See Smith, 459 F.3d at 1290.  Accordingly, the search warrant based on this evidence was not tainted by any illegality and the district court properly denied Simpson's motion to suppress.

In light of the foregoing, Simpson's conviction is

**AFFIRMED.**