[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13882
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 28, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00108-CR-FTM-99-SPC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE EMIGDIO FLORES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 28, 2010)

Before TJOFLAT, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

Jose Emigdio Flores appeals his convictions for possession with intent to

distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and possession

of a weapon in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), on the ground that the district court erred by denying his motion to suppress. We affirm.

In December 2007, Special Agent Michael Kopper of the DEA began investigating Flores for trafficking cocaine. Using a confidential informant ("CI"), Kopper arranged controlled buys from Flores on several occasions. Each time the CI set up a purchase, the deal failed. The CI never saw any cocaine. During the repeated negotiations, Flores would change the type of drug he could supply and the location of the delivery. For each planned transaction, Kopper had obtained an anticipatory search warrant, but the warrants were never executed because the deals failed.

In May 2008, Flores introduced the CI to Gladis Arias-Garcia, who arranged to sell the CI methamphetamine. On July 24, 2008, Flores called the CI to tell him Arias-Garcia was en route from Georgia with the methamphetamine and they could exchange the drugs the following day. On the morning of the 25th, however, Flores postponed the deal to the afternoon. Kopper began surveillance of Flores's auto dealership where the transaction was scheduled to occur. Throughout the day, Flores changed the time and location of the transfer before he eventually decided to make the transfer in the garage at his home late that afternoon. Because

the previous deals with Flores had repeatedly failed, and because there was no way to confirm that Arias-Garcia would actually bring drugs this time, Kopper did not obtain an anticipatory warrant.

With the assistance of other DEA agents, Kopper began surveillance at Flores's home. Around 5 p.m., Kopper received a call from the CI confirming that a silver Toyota pick-up had arrived and the drugs were inside. When Arias-Garcia demanded to see the money before she removed the drugs, Kopper told the CI to "get confirmation" that the drugs were present. The CI convinced Arias-Garcia to produce the drugs and he would have the money delivered. Several of Arias-Garcia's associates left the garage to await the person with the money.

Once the CI confirmed the drugs were present, Kopper and other agents from the DEA, the Fort Myers Police Department, and the Florida Highway Patrol secured the residence. Kopper expected about six or seven people to be at the house with Flores. When the agents secured the home, however, they met only three people; the others, including Flores, had run.

Kopper and the other agents conducted a protective sweep of the house and garage. While in the garage, Kopper looked in the pick-up and observed what appeared to be methamphetamine in the bed of the truck. Although Flores had

tried to escape as the agents arrived, he was caught, arrested, handcuffed, and returned to the house.[1]

After requesting Flores prove his ownership of the house, Kopper requested consent to search the home and Flores agreed. Kopper then conducted the search and seized the drugs he had observed in plain view in the pick-up.

Several hours later, once Flores had been transferred to the precinct, Kopper spoke with Flores and advised him that it would be in his best interest to cooperate. Kopper then informed Flores of his *Miranda*[2] rights. Flores waived his rights and admitted his involvement in the methamphetamine transaction.

Flores was indicted for possession with intent to distribute methamphetamine and possession of a weapon in furtherance of a drug-trafficking crime. He moved to suppress the evidence seized and the statements made in violation of the Fourth Amendment.

The district court denied the motion in part, suppressing only those statements Flores made before receiving his *Miranda* warning regarding the ownership of the home. Reviewing the testimony from the suppression hearing,

---

[1] When he was arrested, Flores advised law enforcement agents that he had a weapon. We see no reason to suppress this evidence as the product of an illegal search; even if Flores had not told the agents about the weapon, the firearm would have inevitably been discovered during a search incident to arrest.

[2] *Miranda v. Arizona*, 384 U.S. 436, 458-71 (1966).

the district court concluded that (1) even though Flores was arrested outside the home, the protective sweep was justified because the agents suspected there were other individuals in the house; (2) agents lacked probable cause to obtain an anticipatory search warrant for the house until the CI confirmed the presence of drugs and thus exigent circumstances supported the warrantless search; (3) Flores's consent was valid and was not the product of an unlawful search; and (4) Flores's post-*Miranda* statements did not require suppression.

Flores then entered a conditional plea, reserving the right to appeal the denial of his motion to suppress. Flores was sentenced to 135 months' imprisonment on the drug count and a consecutive 60-month sentence on the firearm count.

Flores now appeals, challenging the district court's conclusion that exigent circumstances justified the warrantless entry into his home because the police created their own exigency and they could have obtained an anticipatory warrant. He also challenges the conclusion that his consent to search was voluntary and argues that his post-*Miranda* statements should have been suppressed because the arresting officer engaged in unlawful interrogation and the statements were tainted by the unlawful search and his unlawfully-obtained pre-*Miranda* statements.

5

We review a district court's denial of a motion to suppress as a mixed question of law and fact. *United States v. Ponce-Aldona*, 579 F.3d 1218, 1221 (11th Cir. 2009), *cert. denied*, 130 S.Ct. 1094 (2010). We review the district court's legal conclusions *de novo*, and its findings of fact for clear error, construing them in the light most favorable to the prevailing party. *Id.* Furthermore, we "may affirm the denial of a motion to suppress on any ground supported by the record." *United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010).

A. Evidence Seized

"A protective sweep is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *United States v. Delancy*, 502 F.3d 1297, 1306 (11th Cir. 2007) (quotation omitted). Agents may seize any evidence discovered in plain view within the proper scope of a protective sweep. *United States v. Tobin*, 923 F.2d 1506, 1513 (11th Cir. 1991) (*en banc*). A protective sweep is an independent justification for a warrantless entry. *United States v. Burgos*, 720 F.2d 1520, 1525-26 (11th Cir. 1983).

Here, Flores failed to plainly and prominently challenge the district court's finding that the warrantless entry into his home was a protective sweep. *United*

6

*States v. Jernigan*, 341 F.3d 1273, 1284 n.8 (11th Cir. 2003). Therefore, he has abandoned this issue and we could affirm on this basis.[3]

Nevertheless, on review, we agree with the district court that Kopper's actions were a permissible protective sweep. Kopper had reason to believe there would be six or seven people at the house during the transaction, but only three people were visible when Kopper and the other agents arrived. *United States v. Tobin*, 923 F.2d 1506, 1513 (11th Cir. 1991 (*en banc*) (concluding that a protective sweep of the home was proper even when the defendant had been arrested in the garage). In the interest of the officer's safety, Kopper was justified in conducting a protective sweep under these circumstances.[4]

B. Statements

Flores argues that, when Kopper explained the evidence against him before advising him of his rights, Kopper engaged in improper pre-*Miranda* interrogation. He contends this rendered his statement involuntary.

---

[3] Where a defendant in a counseled case makes passing references to an issue in his brief, but does not devote a discrete section of his brief to the argument of that issue and presents those references only as background to claims that he has expressly advanced, the defendant has abandoned that issue on appeal. *Jernigan*, 341 F.3d at 1284 n.8. We do not consider arguments raised for the first time in a reply brief. *United States v. Whitesell*, 314 F.3d 1251, 1256 (11th Cir. 2002).

[4] Because the protective sweep provides sufficient justification to deny the motion to suppress, we need not address the district court's alternate bases for denying the motion to suppress.

When police give the *Miranda* warnings and receive a waiver from the defendant, this generally produces "a virtual ticket of admissibility; maintaining that a statement is involuntary even though given after warnings and voluntary waiver of rights requires unusual stamina, and litigation over voluntariness tends to end with the finding of a valid waiver." *Missouri v. Seibert*, 542 U.S. 600, 608-09 (2004). The fact that police advise a suspect of the evidence against him before providing *Miranda* warnings will not by itself invalidate a subsequent waiver. *United States v. Gonzalez-Lauzan*, 437 F.3d 1128, 1136-38 (11th Cir. 2006).

Our review of the record establishes that Flores was given his *Miranda* rights and that he voluntarily waived his rights and confessed. The fact that Kopper advised Flores of the evidence against him prior to giving *Miranda* warnings does not invalidate the waiver. *Gonzalez-Lauzan*, 437 F.3d at 1136-38. Therefore, Flores's post-*Miranda* confession was admissible. Additionally, because we conclude that the warrantless entry was a proper protective sweep, it could not have tainted Flores's subsequent statements.

For the foregoing reasons, Flores's convictions are

**AFFIRMED.**

8