UNITED STATES of America,
Plaintiff,

v.

Randy Sam JACKSON, and Braden Anthony Jones, Defendants.

CASE NO. 13–20770–CR–ZLOCH

United States District Court,
S.D. Florida.

Signed April 16, 2014

---

Brooke C. Watson, Gera R. Peoples, United States Attorney's Office, Miami, FL, for Plaintiff.

Anita Margot Moss, David Oscar Markus, Markus/Moss PLLC, Miami, FL, Timothy Cone, Federal Public Defender's Office, Fort Pierce, FL, for Defendant.

## ORDER

WILLIAM J. ZLOCH, United States District Judge

THIS MATTER is before the Court upon Defendant Randy Sam Jackson's Motion To Suppress And Request For Evidentiary Hearing (DE 43) and Defendant Braden Jones's Motion To Suppress (DE 45). The Court has carefully reviewed said Motions, the entire court file and is otherwise fully advised in the premises.

Defendants Jackson and Jones are both charged in all Counts of the nine-Count Indictment (DE 3). Specifically, Count 1 charges Defendants with conspiracy to possess, with the intent to defraud, fifteen (15) or more unauthorized access devices, namely, social security numbers issued to other persons, in violation of 18 U.S.C. § 1029(a)(3). In furtherance of the conspiracy, the Indictment charges that on or about April 30, 2013, Defendants possessed a notebook containing over 635 names, social security numbers, and dates of birth, and used a laptop computer to begin a federal income tax return application and refund for another individual, in violation of 18 U.S.C. § 1029(b)(2). Count 2 charges Defendants with knowing and willful possession with intent to defraud fifteen (15) or more unauthorized access devices, namely, social security numbers, in violation of 18 U.S.C. §§ 1029(a)(2) and (3). Defendants are also charged in Counts 3 through and including 9 with knowing transfer, possession, and use of identification of another person, in violation of 18 U.S.C. §§ 1028A(a)(1) and (2).

By the instant Motions To Suppress (DE Nos. 43 & 45), Defendants assert that all evidence seized from the efficiency apartment located at 1071 N.W. 199th Street, Miami Gardens, Florida, on or about April 30, 2013, must be suppressed as "fruit of the poisonous tree." Defendants claim that law enforcement illegally entered the property and, ultimately, the efficiency unit. Thereafter, according to Defendants, law enforcement conducted an allegedly illegal search of the unit and seizure of the evidence in the above-styled cause. The Government opposes Defendants' Motions. *See* DE 47. The Court held an Evidentiary Hearing on the instant Motions (DE Nos. 43 & 45) on January 21–22, 2014.

## I. *Background*

The Parties presented the following testimony and evidence at the Evidentiary Hearing. Detectives Jose Rosado and Chris Shuman testified on behalf of the Government. Defendant Jackson did not present any witnesses, but did introduce evidence, and Defendant Jones presented the testimony of Randy Weinstein, staff investigator for the Federal Public Defender's Office.

On or about April 29, 2013, Detectives Jose Rosado, Chris Shuman, and James Harris—all of the Miami Gardens Police Department—responded to a residence located at 1071 N.W. 199th Street, Miami Gardens, Florida. DE 65, 30:24–32:25; 36:11–15. The Detectives were investigating an anonymous tip reporting "illegal activity and/or narcotics activity" at the rear efficiency unit, specifically. *Id.,* 31:8–10; 36:11–25. After parking their unmarked police vehicle two houses away, they proceeded to the efficiency unit in order to knock on the rear efficiency door to investigate the tip. *Id.,* 33:3; 36:3–15. Detective Rosado testified, "Once I was passing in front of an A/C unit that was next to [the efficiency unit] door, I smelled a strong odor of marijuana coming from the exhaust of that A/C unit." *Id.,* 38:9–12. Detective Rosado testified, "At that point I knocked and announced, 'Miami Gardens Police Department'.... Very quickly, a couple of seconds later the door opened and Mr. Jackson was at the front door." *Id.,* 40:20–24.

Once the door was opened, Detective Rosado observed Defendant Jones sitting at a table in the efficiency, smoking a marijuana cigarette. He also observed smoke, and a strong smell of burned marijuana emanated from the unit. *Id.,* 41:22–42:6; 45:17–21. Further, Detective Rosado observed an open notebook next to a laptop computer on the table. *Id.,* 62:11–

12. Detective Shuman also detected a strong odor of marijuana at the time Defendant Jackson opened the door and observed Defendant Jones at the table "smoking or rolling like a marijuana roach [or] blunt." DE 66, 39:12–40:6. The Detectives asked Defendant Jackson to come outside, and he was compliant. DE 65, 45:1–4. Detective Shuman then detained Defendant Jackson either at or outside the doorway of the efficiency unit, and Detective Rosado asked Defendant Jones to step outside. *Id.,* 45:3–4, 45:12–18, 84:21–85:20; DE 66, 40:2–3, 40:7. Defendant Jones then reached across the table to put a marijuana cigarette in the ashtray. *Id.,* 46:17–19. Because Jones hesitated to comply with Detective Rosado's request, the Detective stepped inside the apartment to detain him and bring him outside "to prevent any other evidence related to the narcotics odor from being destroyed," at which time Defendant Jones cooperated. DE 66, 40:7–10; DE 65, 46:21–47:1. Detective Shuman was able to observe what appeared to be "little baggies of marijuana" on the table, while Detective Rosado detained Defendant Jones. DE 66, 42:24–43:2. Defendant Jackson then made a statement to Detectives Rosado and Shuman to the effect that he does not sell marijuana, he was just smoking it.[1] DE 65, 45:6–10; DE 66, 41:7–15.

While the Detectives were in the process of detaining Defendants outside the apartment, both Detectives Rosado and Shuman observed areas of the efficiency unit in which they were unable to tell if additional people were in the apartment. DE 65, 47:5–11; DE 66, 41:23–42:4. While Detective Harris secured both Defendants outside the efficiency, Detectives Rosado and Shuman conducted a protective sweep for the safety of the officers to determine if other people remained in the areas of the apartment not visible to the Detectives. DE 65, 47:18–19; DE 66, 43:6–7, 43:21–44:4. During the sweep, the Detectives proceeded into the efficiency, checked the obstructed rear area, including the bathroom, and looked under the bed. DE 65, 48:22–49:3; DE 66, 44:2–4. According to the testimony of both Detectives, the sweep lasted approximately one minute. DE 65, 113:8–10; DE 66, 97:19–21.

Detective Shuman testified that, during the sweep, he observed that the screen of the laptop computer on the table displayed "taxtype information." DE 66, 45:23–24; 80:21–24. He also saw at least one Florida Access card on the table, as well as the open notebook with a ledger of names and social security numbers. *Id.,* 45:7–24; 80:10–82:10; 100:14–24. Based on Detective Shuman's training and experience, these items indicated to him that a fraud was taking place. *Id.,* 46:1–6; 100:19–101:6.

Detective Rosado testified that he observed a partially open backpack on the floor of the apartment as he conducted the protective sweep. DE 65, 59:8–14. When he saw the backpack on the floor during the protective sweep, he saw multiple Florida Access cards in the open pouch of the backpack. DE 65, 58:20–25; 61:1–62:2; Government's Exhs. 25 & 26. Based on his training and experience, Detective Rosado's observations indicated to him that "some sort of fraud was occurring." DE 65, 59:1–7. Upon the conclusion of the protective sweep, the backpack and the items contained therein, as well as the items on the table, including the baggies of marijuana, the notebook, the Florida Access card, and the laptop computer, were seized. DE 66, 20:18–23. Both Detectives have training and experience in narcotics

---

1. The Court notes Defendant Jackson is not seeking to suppress his statement.

and fraud. DE 65, 29:9–30:23; DE 66, 30:16–32:10.

## II. Analysis

■ The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV. "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). "Two requirements *must* be met before a person may successfully prevail on a [F]ourth [A]mendment claim." *United States v. Bachner*, 706 F.2d 1121, 1125 (11th Cir.1983)(emphasis added). First, the claimant's legitimate expectation of privacy must be invaded by the search and seizure. *Id.* (citing *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). Second, the search and seizure must be "unreasonable." *Bachner*, 706 F.2d at 1125.

## A. Defendants' Legitimate Expectations of Privacy

■ As to the first requirement, the Court notes that what was often referred to as the question of standing to raise a Fourth Amendment claim now falls within the purview of substantive Fourth Amendment law, rather than that of procedural standing. *Rakas v. Illinois*, 439 U.S. 128, 139–40, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (holding only defendants whose Fourth Amendment rights have been violated shall benefit from the exclusionary rule's protection); *see also United States v. Hawkins*,

681 F.2d 1343 (11th Cir.1982) (noting the correct Fourth Amendment analysis is not focused on standing, but rather the defendant's legitimate expectation of privacy). Only those individuals who have a legitimate expectation of privacy in the invaded property have standing to challenge the validity of a government search. *Rakas*, 439 U.S. at 139–40, 99 S.Ct. 421. Thus, the mere fact that a defendant was the subject of a search or that he was legitimately on the premises fails to confer standing upon that defendant for the purposes of the Fourth Amendment. *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) (overruling the concept of "automatic standing," which permitted a victim of a search or seizure to challenge the evidence obtained).

■ It is well-settled that "[t]he person who asserts his rights were violated under the [F]ourth [A]mendment has the *burden of alleging* and, if challenged, of establishing these requirements [of his legitimate expectation of privacy and the unreasonableness of the search and seizure]." *Bachner*, 706 F.2d at 1125 (emphasis added). In making these allegations, a defendant's motion to suppress "must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented." *United States v. Richardson*, 764 F.2d 1514, 1528 (11th Cir.1985).

### i. Standing as to Defendant Jackson

■ In his Motion To Suppress, Defendant Jackson asserts that he "rents and resides in the efficiency towards the rear of [the] property; it is his home." DE 43, p. 1. The Court notes the Government concedes this allegation in both its Response To Defendants' Motions To Suppress (DE 47) and in its arguments presented at the Evidentiary Hearing. *See* DE 65, 6:10–11 ("Mr. Jackson was [the]

legal tenant for a period of time and during the time of this incident."). Therefore, the Court finds that Defendant Jackson has satisfied his burden as to his legitimate expectation of privacy.

### ii. *Standing as to Defendant Jones*

■ On the other hand, the Court finds that Defendant Jones has failed to *allege* any basis upon which the Court could find that he had a legitimate expectation of privacy in the premises searched or items seized. Defendant Jones had every opportunity to make an allegation demonstrating his legitimate expectation of privacy. He could have done so in his Motion (DE 45). He could have done so prior to the Evidentiary Hearing. He could have done so at the Evidentiary Hearing. However, he did not. The record before the Court remains void of any explanation of Defendant Jones's presence in the efficiency unit, and, therefore, any basis upon which the Court could even attempt to reach the threshold issue that Defendant Jones had a legitimate expectation of privacy in the premises searched or the items seized. The record does not account for how long or why Defendant Jones was in the efficiency unit, merely that he was present at the time of the search. Mere presence, however, no longer confers standing on a defendant to challenge a Fourth Amendment search or seizure. *Rakas*, 439 U.S. at 148–49, 99 S.Ct. 421 (rejecting that "legitimate presence" confers Fourth Amendment standing); *Minnesota v. Carter*, 525 U.S. 83, 90, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) ("[A]n overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not.").

The Court also notes the Government's failure to challenge Defendant Jones's legitimate expectation of privacy, but finds the Government's silence on the issue inapposite. The Court must have a basis upon which it could find Defendant Jones maintained a legitimate expectation of privacy before reaching the question of whether the instant search and seizure violated Defendant's Fourth Amendment rights. These allegations are so fundamental, the Court notes, that

> where a defendant in a motion to suppress fails to allege facts that if proved would require the grant of relief, the law does not require that the district court hold a hearing independent of the trial to receive evidence on any issue necessary to the determination of the motion.

*United States v. Sneed*, 732 F.2d 886, 888 (11th Cir.1984) (affirming the district court's denial of the defendant's motion to suppress and refusal to hold an evidentiary hearing where defendant failed to allege facts demonstrating a legitimate expectation of privacy in his motion); *United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir.2000) ("Defendants are not entitled to an evidentiary hearing based on a 'promise' to prove at the hearing that which they did not specifically allege in their motion to suppress."); *Richardson*, 764 F.2d at 1526–28 (discussing the shortcomings of the defendants' allegations in their motions to suppress). Because Defendant Jones failed to meet his burden of alleging facts that, if proven, would establish his legitimate expectation of privacy in the efficiency unit or the items seized, the Court must deny Defendant Jones's Motion To Suppress (DE 45).

Even assuming, *arguendo*, that Defendant Jones has standing to suppress the evidence at issue, in the alternative, the Court would deny in part and grant in part Defendant Jones's Motion (DE 45) consistent with the disposition of Defendant Jackson's Motion (DE 43). The Court will turn now to the second prong of the

Fourth Amendment analysis, which is the reasonableness of Defendant Jackson's challenge to the search and seizure of all the evidence in the above-styled cause.

B. *The Reasonableness Of The Search And Seizure*

i. *The Approach To The Efficiency Unit*

Defendant Jackson first argues that the Detectives violated his Fourth Amendment right by unconstitutionally entering the curtilage of his home, the efficiency unit. Curtilage is "the land immediately surrounding and associated with the home;" in other words, it "is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life. . . ." *Oliver v. United States,* 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (internal citations omitted). For Fourth Amendment purposes, curtilage receives the protections that attach to the home. *Id.*

In determining the constitutionality of the Detectives' entrance, the Court notes the unconventional nature of the property at issue. A single-story, rectangular structure is located in the center of the property. There are two separate residences inside the structure: the primary residence, the entrance to which faces the street, and the efficiency unit, which is accessible only from one side of the structure. *See* Government's Exhs. 9 & 12; Defendant Jackson's Exhs. 14 & 15. A waist-high, chain-link fence encircles the backyard, beginning from the sides of the structure and wrapping around the backyard. A semi-circular driveway runs in front of the chain-link fence and abuts the front door of the residence that faces the street. Defendant Jackson's Exh. 14. The fence has only one passageway—a gate facing the street on the same side of the structure as the efficiency unit's entrance. *Id.* This gate is wide enough for a car to pass through it. *Id.* On the fence near the gate is a sign that reads, "Beware of Dog." Government's Exh. 11. The *only* manner by which a person may approach and enter the efficiency unit from the street is to pass through this gate. Further, the door on the side of the structure is the *only* entrance to the efficiency unit; there is no entrance to the unit through the primary residence. DE 65, 49:22–50:7.

The Detectives testified that the gate was open at the time of their approach and that they proceeded straight to the door. DE 65, 37:24–38:10; DE 66, 47:10–25. Defendant Jackson argues that the gate was closed, contrary to Detectives' testimony, in order to show the Detectives did not have an implied invitation to enter. In support of this argument, he relies on photographs taken several months after the date of the events at issue. *See* DE 66, 152:7–14. The Court finds this evidence insufficient to negate the Detectives' testimony. Defendant Jackson next relies on the testimony, introduced through Defendant Jones's witness, that an individual reported the gate was kept closed. *See* DE 66, 122:16–17. However, the identity of the individual was the never determined; thus, the Court finds this evidence unpersuasive. DE 66, 133:4–23. Finally, the arrest affidavit indicates that the gate was "unlocked." DE 66, 54:11–6. The Court, however, notes that if the gate is "open," logic demands that it must also be "unlocked." The Court, therefore, credits the Detectives' testimony that the gate was open at the time of their arrival to the efficiency unit.

In addition to the open gate, the Court notes that the sign does not say "No Trespassing" or "Do Not Enter;" rather, it warns of a dog, which was not present in the backyard at the time, according to Detective Shuman. Government's Exh.

11; DE 66, 49:2–8. Moreover, the Detectives approached the residence for the purpose of conducting a "knock and talk." DE 66, 13:16–17; 34:24–35:2. The tip that they were seeking to investigate specifically referenced the "rear efficiency unit." DE 65, 36:20–22 ("When I was walking up to the residence you could see a door to the rear. The tip was very descriptive in saying where it was located.").

▮▮▮▮▮ "A police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.'" *Florida v. Jardines*, —— U.S. ——, 133 S.Ct. 1409, 1416, 185 L.Ed.2d 495 (2013) (*quoting Kentucky v. King*, 563 U.S. 452, 131 S.Ct. 1849, 1862, 179 L.Ed.2d 865 (2011)). [2] "The Fourth Amendment ... is not implicated by entry upon private land to knock on a citizen's door for legitimate police purposes unconnected with a search of the premises." *United States v. Taylor*, 458 F.3d 1201, 1204 (11th Cir.2006); *United States v. Lowry*, 315 Fed.Appx. 214, 215 (11th Cir.2008) ("Unless expressly prohibited, an officer is permitted to approach a residence and knock on the front door of any property to the extent that a private citizen could do the same."); *see also United States v. Shuck*, 713 F.3d 563, 567 (10th Cir.2013) ("Even assuming the area traversed by the officers was within the curtilage, the officers would not have violated the Fourth Amendment by walking up to the back door and knocking, as they did here.") (*citing Jardines*, 133 S.Ct. at 1415). Here, the officers approached the efficiency unit via the normal route of access used by anyone visiting that residence. A social guest, a census taker, even a Girl Scout seeking to pay a visit to the efficiency unit could only do so using the exact same route as that utilized by the Detectives. *See Jardines*, 133 S.Ct. at 1415 (comparing the typical conduct of the "Nation's Girl Scouts and trick-or-treaters" to the scope of a constitutional intrusion on curtilage). If the Detectives had first knocked on the door of the property that faces the street, making contact with the occupants of the rear efficiency unit referred to in the tip would still have required the Detectives to proceed through the property in the exact same manner as they did here.

Finally, the record indicates that Defendant Jackson voluntarily opened the door when Detective Rosado knocked and did not do so in response to threats or police coercion. *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir.1991) ("If the circumstances indicate that [the defendant] opened the door in response to a 'show of official authority,' then [the defendant] cannot be deemed to have consented to the agent's obtaining the olfactory evidence indicating the presence of marijuana.") (internal citations omitted). The Detectives did not have their weapons drawn when they knocked. DE 65, 115:8–11. Detec-

---

**2.** The Court notes Defendant Jackson's heavy reliance on *Jardines* for his proposition that the Detectives breached the constitutional bounds of his curtilage. Counsel for Defendant Jackson even asserted that the cases cited by the Government at the Evidentiary Hearing and in its briefs, which include cases cited by this Court in this Order, are nno longer good law." DE 66, 148:23-149:1. The Supreme Court held in *Jardines* that the nuse of trained police dogs to investigate the home and its immediate surrounds is a 'search' within the meaning of the Fourth Amend-

ment." 133 S.Ct. 1409, 1417–18 (2013). Here, unlike in *Jardines*, the Detectives entered to conduct a knock-and-talk and utilized their own, innate senses to detect the marijuana; no dogs or other devices were employed. *See id.* at 1419 n. 2 ("If officers can smell drugs coming from a house, they can use that information; a human sniff is not a search, we can all agree") (Kagan, J., concurring). The Court has equal access to the case law and can sniff out erroneous statements of the law, just as the canine on the curtilage in *Jardines* could smell drugs.

tive Rosado announced their presence as he knocked, although Detective Shuman recalls him making the announcement either as Defendant Jackson opened the door or shortly after. *Compare* DE 65, 40:20–24; *with* DE 66, 39:12–17. Regardless of when the announcement was made, Defendant Jackson has neither raised the argument that he did not voluntarily open the door, nor does the record support such an argument. Accordingly, the Detectives did not violate the Fourth Amendment when they proceeded through the gate and knocked on the door of the efficiency unit with the intent to talk to the residents regarding the anonymous tip.

ii. *The Arrest*

█ Defendant Jackson next argues, essentially, that because the Detectives conducted an illegal, warrantless in-home arrest, the subsequent search and seizure are tainted and must be suppressed. It is undisputed that the Detectives in the above-styled cause conducted a warrantless arrest, followed by a warrantless search and seizure of evidence. When conducting an in-home arrest without a warrant, "[t]he Fourth Amendment does not permit an officer to cross [the threshold of the home] and forcibly remove a citizen from his home absent an exigency or consent." *McClish v. Nugent*, 483 F.3d 1231, 1241–42 (11th Cir.2007) (finding probable cause to obtain a warrant existed for many hours prior to the arrest); *see also Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (finding the warrantless, nonconsensual entry into a suspect's home to make a routine felony arrest unconstitutional).

█ Probable cause to make an arrest exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir.1998). Exigent circumstances exist when "the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." *United States v. Burgos*, 720 F.2d 1520, 1526 (11th Cir.1983); *United States v. Santa*, 236 F.3d 662, 669 (11th Cir.2000). Exigent circumstances exist in situations which present "danger of flight or escape; danger of harm to police officers or the general public; risk of loss, destruction, removal or concealment of evidence; and hot pursuit of a fleeing suspect." *Santa*, 236 F.3d at 669 (internal citations omitted).

█ Prior to entering the gate and approaching the house, the Detectives had only the information provided in the anonymous tip. The officers in *McClish*, on the other hand, had probable cause to obtain a warrant for several hours prior to arriving at the home. 483 F.3d at 1241–42. Here, probable cause was established, at the earliest, when Detective Rosado smelled the odor of marijuana emanating from the A/C unit as the Detectives reached the door. However, "[l]aw enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall short of the amount necessary to support a criminal conviction." *Hoffa v. United States*, 385 U.S. 293, 310, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *United States v. Tobin*, 923 F.2d 1506, 1511 (11th Cir.1991) (affirming law enforcement's decision to conduct a knock-and-talk despite the presence of probable cause and exigent circumstances); *United States v. Smalls*, 617 F.Supp.2d 1240, 1257 (S.D.Fla.2008) ("At the earliest, probable cause was established when [the police]

were at the door to the apartment, wearing vests which clearly identified them as the police, and they smelled the marijuana burning.").[3]

██ The Court recognizes that the law draws a line at the threshold of the home. "Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The evidence in the record indicates that Detective Shuman stayed at or just outside the doorway in conducting the arrest of Defendant Jackson. Detective Rosado testified that Defendant Jackson stepped outside when he was asked, and that Detective Shuman "stayed with him" while Detective Rosado secured Defendant Jones. DE 65 45:3–4, 45:12–18, 84:21–85:20. Detective Shuman testified that he detained Defendant Jackson in the doorway. DE 66, 55:3–14. No evidence exists to support the contention that the Detectives unconstitutionally crossed the threshold of the unit in conducting Defendant Jackson's arrest.

██ In the alternative, even assuming *arguendo,* that Detective Shuman crossed the threshold to arrest Defendant Jackson, the Court also finds that probable cause and exigent circumstances existed to conduct the arrest, based on the illegal narcotics activity in plain view when Defendant Jackson voluntarily opened the door, Defendant Jones's hesitation to exit the unit, the layout of the efficiency, and the inherent risk of destruction of evidence in narcotics cases. *See Tobin,* 923 F.2d at 1510–

11 (discussing the presence of exigent circumstances when narcotics are present).

### iii. The Initial Entry Into The Efficiency Unit

██ A warrantless search and seizure in a home is "presumptively unreasonable." *Payton v. New York.* 445 U.S. at 586, 100 S.Ct. 1371. However, a warrantless search may be justified where both probable cause and exigent circumstances exist, which the Government bears the burden of establishing. *United States v. Tobin,* 923 F.2d at 1510; *United States v. Burgos,* 720 F.2d 1520, 1525 (11th Cir. 1983). Defendant Jackson maintains that the entry into the apartment was unconstitutional because no exigent circumstances existed at the time. The Eleventh Circuit recognizes that "the need to invoke the exigent circumstances exception to the warrant requirement is 'particularly compelling in narcotics cases' because narcotics can be so quickly destroyed." *United States v. Tobin,* 923 F.2d at 1510 (*quoting United States v. Young,* 909 F.2d 442, 446 (11th Cir.1990)). The test for exigent circumstances is an objective one. *United States v. Young,* 909 F.2d at 446. "[T]he appropriate inquiry is whether the facts ... would lead a reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured." *Id.* (internal citations omitted).

Indeed, Detective Rosado had a compelling reason to enter the apartment and remove Defendant Jones, given Jones's hesitation to comply with Detective Rosado's instruction to exit the efficiency unit and the risk that he would destroy evi-

---

**3.** Defendant Jackson argues that the Detectives' testimony is not credible because Detective Rosado testified that he smelled the odor of marijuana coming from the A/C unit near the efficiency door during the approach to the residence. DE 65, 38:9–12. Detective Shuman, on the other hand, testified that he de- tected marijuana once the door opened. DE 66, 50:21–51:2. However, simply because one officer may have more precise olfactory perception than the other, the Court fails to see how this touches upon the Detectives' credibility as Defendant Jackson argued at the Evidentiary Hearing. *See* DE 66, 153:6–14.

dence. Thus, the Court finds probable cause and exigent circumstances existed to support Detective Rosado's initial entry into the apartment to remove Defendant Jones.

### iv. *The Protective Sweep*

 Defendant Jackson maintains that no legal justification exists for the protective sweep. The Court disagrees. "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). Moreover, "[a] protective sweep is an independent justification for a warrantless entry." *United States v. Flores*, 380 Fed.Appx. 921, 924 (11th Cir.2010) (*citing United States v. Burgos*, 720 F.2d 1520, 1525–26 (11th Cir. 1983)); *United States v. Timmann*, 741 F.3d 1170, 1181 (11th Cir.2013) ("A protective sweep may also be undertaken without an arrest warrant, so long as the officers are lawfully within the premises due to, for example, the existence of exigent circumstances."). The sweep must be "narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *United States v. Delancy*, 502 F.3d 1297, 1306 (11th Cir.2007).

 Here, the officers testified that a back area of the efficiency unit exists, partially blocked by a wall, and they were unable to tell from the doorway if additional people were present in the efficiency unit. DE 65, 47:18–19; DE 66, 43:21–44:4. The sweep was reasonably limited in scope, as the Detectives looked only in the back area of the apartment, behind the separating wall where there was a bathroom, and under the bed, all places which could potentially harbor a person. DE 65, 48:22–49:2; DE 66, 43:23–44:4. Moreover, the duration of the sweep was brief, lasting only about a minute. DE 65, 113:8–10/ DE 66, 97:19–21. Accordingly, the Court finds no Fourth Amendment violation occurred as a result of the protective sweep.[4]

### v. *The Seizure of Evidence*

 Defendant Jackson's final argument is that the seizure of all the evidence in the above-styled cause was in violation of his Fourth Amendment rights. However, it is well-settled that "[a]gents may seize any evidence discovered in plain view within the proper scope of a protective sweep." *United States v. Tobin*, 923 F.2d 1506, 1513 (11th Cir.1991); *Coolidge v. New Hampshire*, 403 U.S. 443, 489, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) ("Where the initial intrusion that brings the police within plain view of [contraband] is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is … legitimate."). An item falls within the purview of the plain view doctrine if three requirements are met. "If police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *Coolidge*, 403 U.S. at 468, 91 S.Ct. 2022 ("Where, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience … to require them to ignore it until they have obtained a warrant particularly describing it."). Further, the fact that evidence seized in plain view

---

4. The Court notes Defense counsel's argument at the Hearing that *Buie* requires the arrest to be for a felony offense in order to conduct a protective sweep. *See* DE 66, 161:1–162:6. *Buie* says no such thing.

is "unrelated to the justification for [the] entry into [a defendant's] apartment" does not render a plain view seizure unreasonable. *Arizona v. Hicks,* 480 U.S. 321, 325, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) ("That lack of relationship *always* exists with regard to action validated under the 'plain view' doctrine.") (emphasis in original).

■■■ Detective Rosado testified that he observed a backpack on the floor during the protective sweep, as well as numerous Florida Access cards, a checkbook, and a part of a laptop computer in plain view in the backpack. DE 65, 58:18–25, 104:9–11; *see also* Government Exh. 25. As to the backpack itself and to the extent the laptop was plainly visible within it, nothing in the record indicates that the Detectives had probable cause to believe these items were contraband. *Dickerson,* 508 U.S. at 375, 113 S.Ct. 2130 ("If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object i.e., if its incriminating character [is not] immediately apparent, the plain-view doctrine cannot justify its seizure."); *see also United States v. Lall,* 607 F.3d 1277, 1291 (11th Cir.2010) (refusing to apply the plain view doctrine where the officers could not state that the incriminating nature of computer equipment in plain view was readily apparent to them). Further, the Court notes that, with the exception of part of said laptop, the Florida Access cards and the checkbook, the contents of the backpack were not in plain view during the protective sweep. *See* Government Exhs. 25 & 26; DE 65, 101:4–6 (indicating Detective Rosado had to go through the backpack to discover the remaining contents). Thus, the plain view doctrine cannot be applied to allow the admission of the contents of the backpack beyond what was plainly visible to the officers during the protective sweep. Accordingly, the Court will grant Defendant's Motion (DE 43) to the extent it seeks to suppress the backpack itself and the contents contained therein, excluding the Florida Access cards and the checkbook.

The Court notes the conflict between the testimony regarding the cell phones collected and the physical evidence before the Court. Detective Rosado initially testified that Government's Exh. 31–C contains the cell phones that were on top of the table. DE 65, 67:2–4; Government's Exh. 31–C. Said Exhibit contains three cell phones. The photographs corroborates that three cell phones were on top of the table. *See* Government's Exhs. 16, 18 & 35. However, Detective Rosado later indicated that some of the cellphones contained in Government's Exh. 31–C may have been inside the backpack.[5] DE 65, 96:19–97:18. Thus, the record is not clear whether all of the cell phones seized were the cell phones in plain view on the table. Regardless of the amount or from where the cellphones were collected, however, the Court finds that no evidence or testimony points the incriminating nature of the cellphones, in light of the offenses for which the officers had probable cause at the time. The Court will, therefore, grant Defendant's Motion (DE 43) to the extent it seeks to suppress the cellphones.

■■■ On the other hand, the Court finds that the remaining items seized meet the requirements of the plain view doctrine. First, the marijuana seized was in plain view on the table where Defendant Jones had been sitting and its incrimina-

---

5. Counsel for the Government also indicated during closing arguments that one of the three cell phones contained in Government's Exh. 31–C was collected from the table. DE 66, 186:11–25.

ting nature was immediately apparent to the Detectives. DE 65, 50:14–19; DE 66, 21:24–22:1. Additionally, Detective Rosado testified that he observed numerous Florida Access cards in the open backpack on the floor during the protective sweep. DE 65, 58:20–25; 59:8–14; 61:1–62:2; Government's Exh. 25. Based on his training and experience, the presence of multiple Florida Access cards indicated to him that "some sort of fraud was occurring." DE 65, 59:1–7.

Detective Shuman also testified that based on his observations of the items on the table during the protective sweep, specifically, the laptop computer screen, the notebook, and the Florida Access card, he also believed that a fraud was afoot, based on his training and experience. DE 66, 46:1–6; 100:19–101:6. Thus, the record reflects that incriminating nature of the Florida Access cards, the notebook, and the laptop computer on the table in plain view was clear to the Detectives during the protective sweep. "For an item's incriminating character to be 'immediately apparent,' the police merely need probable cause to believe that the item is contraband." *United States v. Simpson*, 259 Fed.Appx. 164, 167 (11th Cir.2007) (*citing Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)). Probable cause that the Defendants are engaged in fraudulent activity also supports the seizure of the checkbook in plain view.

Moreover, at the time the incriminating nature of these items became apparent to the Detectives, they had a lawful right of access to these items. Therefore, the Court will deny Defendant Jackson's Motion To Suppress (DE 43) to the extent it seeks to suppress the Florida Access cards, the checkbook, the notebook and the papers therein, and the laptop computer collected from the table where Defendant

Jones had been sitting in the efficiency unit.

 Additionally, the Court will deny Defendant Jackson's Motion (DE 43) to the extent it seeks to suppress the photographs taken of the scene after the protective sweep that do not depict any of the physical evidence suppressed. "Once that [privacy] interest is invaded legally by an official of the State, the citizen has lost his reasonable expectation of privacy to the extent of the invasion." *United States v. Brand*, 556 F.2d 1312, 1317 (1977). Here, a crime scene technician entered the efficiency unit in order to take photographs of the scene. "Additionally investigators or officials may therefore enter a citizen's property after one official has already intruded legally." *Id.* Thus, because the Court finds that the Detectives' entry into the unit was legal, the photographs of the scene taken after the protective sweep which do not depict the suppressed evidence, are therefore, admissible.

Accordingly, after due consideration, it is

**ORDER AND ADJUDGED** as follows:

1. Defendant Randy Sam Jackson's Motion To Suppress And Request For Evidentiary Hearing (DE 43) be and the same is hereby **GRANTED** in part and **DENIED** in part as follows;

a) To the extent it seeks to suppress the cell phones, backpack, and its contents, excluding the Florida Access cards and the checkbook, Defendant Jackson's Motion (DE 43) be and the same is hereby **GRANTED**;

b) To the extent it seeks to suppress the marijuana, Florida Access cards, the checkbook, the laptop computer collected from the table, the notebook and the papers contained therein, and the photographs of the scene which do not depict evidence suppressed in this Order, Defen-

dant Jackson's Motion (DE 43) be and the same is hereby **DENIED;** and

2. Defendant Braden Jones's Motion To Suppress (DE 45) be and the same is hereby **DENIED** for lack of standing. In the alternative, assuming, *arguendo,* Defendant Jones has standing, his Motion (DE 45) is granted in part and denied in part consistent with the Court's ruling on Defendant Randy Sam Jackson's Motion To Suppress (DE 43).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this *16th* day of April, 2014.